OWEN HECKER, Appellant, v. AARON BOYLAN, ET AL., Appellees.

**Bills and Notes:** TRANSFER: DEFENSES. Where a negotiable note payable to order is transferred by delivery and assignment, the holder becomes merely the assignee of a chose in action and takes the same subject to any defense in favor of the makers arising prior to notice of the transfer.

**Default in interest payments:** WAIVER. Acceptance and retention of past due interest on a note by the payees will preclude their assignees from enforcing a provision that upon the default in payment of interest the whole note shall become due, where the same was paid prior to notice of the assignment.

*Appeal from Hardin District Court.*— HON. J. H. RICHARD, Judge.

SATURDAY, DECEMBER 17, 1904.

ACTION on a promissory note for the sum of $768 made by the defendants to Thompson Bros., or order, and payable at the office of the Hubbard State Bank, Hubbard, Iowa, due

on or before five years after April 2, 1900, with interest at eight per cent. per annum. The note also provided that a failure to pay interest within thirty days after it became due should, at the option of the holder, mature the whole amount of the note, principal and interest. Thompson Bros. orally transferred the note to O. F. Anderson and J. S. Bly. Bly transferred his interest in the note to plaintiff by written instrument dated August 31, 1901. On the same day Anderson, by written instrument, sold and assigned to plaintiff his interest in the note. Plaintiff brought this action July 29, 1902, to recover the full amount of the note and interest; alleging that the interest thereon had not been paid within thirty days after it became due. It is further alleged that Anderson and Bly were the real owners of the note at the time it was given. Defendants Milner and Milner, who claim to be sureties on the note, filed answer; and Boylan· also filed a separate answer, tendering various issues, among which were that the note belonged to Anderson and Bly, who furnished the consideration, and that the Thompson Bros. held the same in trust and as agents for them; that the actual consideration for the note was about $661, and that on August 31, 1901, the principal, Boylan, paid the interest on the note, with interest, to the actual owners or their agents, which has ever since been retained by them; that plaintiff knew of such payment when he acquired the note, and is bound thereby. They further alleged that prior to April 2, 1902, they paid to the Hubbard Bank all interest down to April 2, 1902, as plaintiff well knew when he purchased the note and commenced this suit, and that no interest was in fact due when this action was commenced. They also pleaded failure of plaintiff to demand interest before the bringing of his suit. Other defenses were also pleaded, which need not be set out. Boylan, who, it is claimed, was principal in the note, pleaded practically the same defenses. A reply denying the affirmative allegations of these answers was interposed by the plaintiffs. On these issues the case was tried

to a jury, resulting in a directed verdict for the defendants, and plaintiff appeals.— *Affirmed.*

*Ward & Hayes,* for appellant.

*Tom H. Milner,* for appellees.

DEEMER, C. J.— Boylan was principal and the Milners were sureties upon the note in suit. It was in fact given to Thompson Bros., although Anderson and Bly furnished the consideration therefor by meeting a shortage of Boylan as postmaster. The exact amount of money furnished by Anderson and Bly was something over $600. After the note was taken, it remained with Thompson Bros., the ostensible payees, who were also in fact the Hubbard State Bank, until about August 28, 1901, when it was sent to Bly, with a statement that they (Thompson Bros.) would assign it at any time to the real owners in proportion to their respective interests. Just where this note was from August 28th until August 31st is not shown, but on this last-named date Anderson and Bly separately sold and assigned their interests therein to the plaintiff, stating to him that no interest had been paid thereon. Plaintiff sent the note to a banker at Iowa Falls, who notified some of the defendants, that the entire amount called for by the note had matured, and that he wanted the same paid. August 30, 1901, the Thompsons notified one of the Milners of the amount paid to the government on account of the shortage, and directed him to remit interest to Bly or to him (Thompson), and to notify Bly, at Iowa Falls, that he had sent it. Pursuant to this notice either the Milners or Boylan immediately, and on August 31st, sent a check for the interest to W. J. Thompson, Hubbard State Bank. In April of the next year the makers, or some of them, sent the interest for the second year to the Thompson Bros. or to the bank. These checks were cashed, and none of the money received thereon has ever been re-

turned to the defendants.    The note was never indorsed by Thompson Bros., the payees named therein, but was delivered by them, without any form of indorsement or transfer, to Anderson and Bly, the real owners, not later than August 31, 1901.    Anderson and Bly did not indorse it in the regular way, but sold and assigned the same to Hecker, the plaintiff, so that the rules applicable to ordinary commercial paper will not solve this controversy.    When Anderson went to the bank, the latter part, of August or the first part of September, 1901, to see about the note, he asked the Thompsons if the interest had been paid, and one of them said that it had not been.    Anderson then declared that "then the note is due, and I will sue on it."    Instead of doing this, he conferred with his joint owner, and concluded to sell the same to the plaintiff.    Plaintiff purchased the same, and took an assignment, as before stated, and, upon defendants' refusal to pay the note in full, brought suit on July 29, 1902, to collect the whole amount called for by the note. Defendants had no notice of plaintiff's ownership, or the interest that Anderson and Bly had in the note, until July of the year 1902, after all the interest payments had been made, as before stated.    When Anderson went to the Thompsons to see if the interest had been paid, and was informed that it had not been, he [one of the Thompsons] said, however, that "we [meaning Thompson Bros.] could pay it at any time, and would pay it then if he [Anderson] wanted it." Anderson responded by saying: "If you should pay me the interest, I could not sell it.    So I will sell it."    Thompson then again offered him the interest.    It seems that one of the Milners had an account current with Thompson Bros. or the bank, and had directed them to pay any of his bills or obligations that might be presented.    They had not charged up this interest, as we understand it, because it was a surety debt, and he did not feel authorized to do so, although they expressed a willingness when Anderson called for the interest on the obligation. . The Thompsons were never the

agents for Bly, save as they held the note for him and Anderson, but they were Anderson's agents down to the time he took the note away. Hecker had no notice, so far as shown, of any interest payments being made; and Bly was not informed thereof at any time until after he had taken the note, when he was told by one of the Thompsons that they would pay him the interest on it.

If the note had been properly indorsed by Thompson Bros. to Anderson and Bly, and by them to the plaintiff, we should have no hesitancy in finding that the trial court was in error, under the conceded facts, in directing a verdict for the defendants. But the note, while negotiable in form, was not transferable by delivery, so as to bring the transfer within the rules of the law merchant. It was transferred by delivery from Thompson Bros. to Anderson and Bly, and they assigned their respective interests therein to the plaintiff. Under such a showing the holder is nothing more than an assignee of a chose in action, and, as such, took the instrument subject to any defense existing in favor of the makers and against the assignors before notice of the assignment by them. Code, sections 3043, 3461; *Younker v. Martin,* 18 Iowa, 143; *Franklin v. Twogood,* 18 Iowa, 515; *Johnson v. Walter,* 60 Iowa, 315.

1. BILLS AND NOTES: transfer; defenses.

Defendants made payments of interest to the assignors of the note, Thompson Bros., which were accepted and retained by them down to the present. Had they remained the holders thereof, this would have constituted a waiver of their right to enforce the entire note by reason of default in the payment of interest. These payments were made and accepted before they (defendants) had any notice that the payees were not in fact the real owners, and before they had any notice of the assignment to the plaintiff. Under the statutes referred to, and under the law generally, this was a defense of which

2. DEFAULT IN INTEREST PAYMENTS: waiver.

they could have availed themselves in a suit brought by the assignee of the note.

There were some erroneous rulings on evidence, but, in view of the undisputed evidence, these rulings were without prejudice.

The motion to strike appellees' abstract and argument is overruled.

No prejudicial error appears, and the judgment is *affirmed.*