JACKSON STATE BANK, APPELLANT, V. LAUREL NATIONAL
BANK, APPELLEE.

FILED FEBRUARY 26, 1924.   No. 22649.

Bills and Notes: TRANSFER. Under sections 4641, 4642, Comp. St. 1922, a negotiable instrument payable to the order of a person can be transferred, so as to preserve the negotiable character of the instrument, only by the indorsement of the holder completed by delivery. The indorsement must be in writing on the instrument itself, or upon a paper attached thereto.

APPEAL from the district court for Cedar county: GUY T. GRAVES, JUDGE. Affirmed.

Sidney T. Frum, for appellant.

F. P. Voter and B. Ready, contra.

Heard before LETTON, ROSE and DAY, JJ., ELDRED and REDICK, District Judges.

DAY, J.

This action was brought by the Jackson State Bank of Jackson, Nebraska, against the Laurel National Bank of Laurel, Nebraska, to recover on a draft for $300 issued by the defendant and drawn on the Security National Bank of Sioux City, Iowa, in which Roy Vernon was named as payee,

and which it is alleged came into the possession and own-ership of the plaintiff in due course. ' The answer of the defendant admitted that it issued the draft; pleaded that it received no consideration therefor; and denied that the plaintiff was the owner and holder of the draft in due course.    The reply denied the allegations of new matter pleaded in the answer.    The trial resulted in a verdict and judgment for the defendant.    Plaintiff appeals.

The principal question in dispute was whether Vernon, the payee named in the draft, had indorsed it.

It may not be amiss to state some of the facts which gave rise to the present controversy.    It appears that Vernon, in behalf of himself and another, had made arrangements with a bootlegger to purchase a number of cases of whisky to be delivered and paid for in cash at Allen, Nebraska. The delivery of the whisky and the collection therefor was to be made by Louis Johnson.    On April 12, 1919, Vernon went to the town of Laurel and purchased the draft in ques-tion, giving in payment therefor his personal check drawn on the Dixon Bank of Dixon, Nebraska.    On the same day he also purchased from the First National Bank of Laurel a draft for $350.    The present suit involves only the draft for $300 issued by the Laurel National Bank.    By arrange-ment, Vernon met Johnson at Allen, where two barrels supposed to contain the cases of liquor were delivered to a confederate of Vernon, and thereupon Vernon delivered the two drafts to Johnson.    There is a direct dispute in the evidence as to whether Vernon indorsed the drafts, which will presently be considered.    On the same day John-son went to the town of Jackson, where he presented the drafts to the plaintiff bank for payment.    The cashier of the plaintiff bank testified, in substance, that when the drafts were presented he did not examine them carefully, but thought they bore no indorsement; that he supposed the drafts were being presented by Vernon, and said to John-son, the drafts are all right, and if you are Roy Vernon and can be identified you can get the money; that Johnson replied, "If I wasn't Roy Vernon, I wouldn't be getting

the money;" that thereupon Johnson went out and returned with Orval Beith; that he asked Beith whether he knew this man, and that Beith replied that he did, and that he had known him for a number of years; that he then told Johnson, under the belief that he was Vernon, to indorse the drafts; that Johnson went to a near-by desk, took out a pencil and appeared to be writing; that when the drafts were again presented they were indorsed with the name "Roy Vernon;" that he then requested Beith to indorse the drafts, which he did, and that thereupon he paid the amount of the drafts to Johnson.

Johnson testified that he did not represent himself to be Vernon; that he did not write the name "Roy Vernon" on the drafts; that the indorsement was made by Vernon at the depot in Allen at the time the drafts were delivered.

Beith testified that he did not understand that the cashier was under the belief that Johnson was Vernon; that the cashier simply asked him whether he knew this man, and that he answered that he did.

Vernon testified that he did not indorse the drafts. Other testimony was introduced on both sides tending to corroborate their respective theories.

Under this state of facts, it was clearly a question for the jury to determine whether the draft in question was indorsed by Vernon.

Meanwhile, at the earliest opportunity, Vernon proceeded to examine his newly-made purchase. One can readily imagine his chagrin on discovering that, instead of the cases of whisky, the barrels contained only shelled corn. Realizing that he had been duped by a bootlegger, he hastened to the telephone and stopped the payment of his check, and also stopped the payment on the draft.

Under this state of the record, the payment of the check given to the defendant bank for the draft having been stopped by Vernon, it is clear that the defendant received no consideration for its draft. As between Vernon and the defendant bank, the latter had the right to stop the payment of its draft. The question is then presented whether

the plaintiff is the owner of the draft in due course. The draft was a negotiable instrument, and if plaintiff became the owner thereof in due course, the defense of lack of consideration on the part of the defendant would be unavailing. The draft, being a negotiable instrument payable to the order of Roy Vernon, could be transferred so as to preserve its negotiable character only by the indorsement of Roy Vernon on the instrument itself, or upon a paper attached thereto. Comp. St. 1922, secs. 4641, 4642.

The question whether Vernon indorsed the draft was submitted to the jury by instruction No. 4, which was as follows: "If the jury believe from the evidence that the draft, exhibit A, sued upon by the plaintiff was issued by the defendant payable to the order of Roy Vernon, and that said Roy Vernon never indorsed said draft, then you should find for the defendant and so say by your verdict." In response to this issue, the jury returned a verdict for defendant. The plaintiff criticises the above instruction, but we think it was responsive to the evidence and is a correct statement of the law.

Plaintiff also complains of the giving of instruction No. 5, given by the court on its own motion, but in the motion for a new trial no complaint is made of that instruction. Plaintiff also complains that the court erred in failing to give instruction No. 2, requested by the plaintiff. This instructon was to the effect that a negotiable instrument may be transferred by a separate oral agreement, followed by a delivery. It is unnecessary for us to decide whether an oral agreement would constitute an equitable assignment of the instrument, but a verbal assignment would not constitute such a transfer of the instrument as to preserve its negotiable character.

Complaint was also made of the failure of the court to give other instructions requested by the plaintiff, but an examination of these discloses that the substance of such instructions was given by the court on its own motion.

Under the circumstances presented by the record, we

must be satisfied with the finding of the jury on the question whether Vernon had indorsed the draft.

We find no error in the record. The judgment is

AFFIRMED.