PLATTSMOUTH STATE BANK, APPELLANT, V. V. C. REDDING, APPELLEE.

FILED JANUARY 25, 1935. No. 29030.

*Wright & Wright,* for appellant.

*Mothersead & York, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and RAPER, District Judge.

PAINE, J.

In an action on a promissory note, the trial court instructed a verdict for the defendant. Plaintiff appeals.

Plaintiff bank in its amended petition alleges that the defendant on October 5, 1928, gave his note for $2,500 to the State Bank of Minatare; that said note bore 10 per cent. interest from date, and its maturity was December 5, 1928; that on October 6, 1928, the State Bank of Mina-

tare, in due course of business and for a valuable consideration, assigned and delivered the note to the plaintiff, who has ever since been the owner and holder thereof. The answer admitted the execution and delivery of the note, denied the other allegations set out, and further alleged that the defendant had paid the note in full.

The case was tried to a jury, and after the evidence was concluded each party moved for an instructed verdict. After argument by counsel, the court found that the plaintiff was not a holder in due course, but a mere assignee, and that the defendant paid the note to the payee thereof, without notice of any assignment or transfer of the note, and that said payment constituted a full payment and discharge of the note and a release of the defendant.

The evidence in the case discloses that the note, exhibit No. 1, was made upon the regular note form of the State Bank of Minatare, and no indorsement of any kind appears upon the back thereof. The evidence further shows that during the summer of 1928, the exact date not being disclosed in the evidence, Mr. L. F. Johnson, the president of the State Bank of Minatare, and Mr. L. L. Conklin, a director of said bank, went to Plattsmouth, Nebraska, to borrow money of the plaintiff bank. The president of the plaintiff bank was the father of the cashier of the State Bank of Minatare. After some negotiation, the president of plaintiff bank made a loan to these two men upon a note signed by them individually, basing the loan, he said, upon the property statement of L. L. Conklin. Some months thereafter, and on October 6, 1928, the cashier of the State Bank of Minatare sent plaintiff bank 52 notes, totaling $20,000, the note sued upon being included, and in the letter, exhibit 4, accompanying them, said: "We enclose herewith notes aggregating $20,000 under guarantee of Mr. Johnson and Mr. Conklin which we would like to have you handle for us until beet pay day when they will positively be paid," etc.

It appears that there was a balance due upon the note given by Johnson and Conklin in the summer of 1928, and

that, after taking up the note of these individuals, there was forwarded by the draft of plaintiff to the Omaha National Bank the balance, in the sum of $14,546.09, which amount of the proceeds of the 52 notes was there placed to the credit of the State Bank of Minatare. In the note given by these men in the summer of 1928, no collateral of any kind was listed in the note itself. However, on June 20, 1929, a new note was given to the plaintiff for $3,917, signed by the same L. F. Johnson and L. L. Conklin, and in said note there was listed, as collateral thereto, the note in suit of $2,500, signed by defendant, which was then long past due, and another note of $1,417. The president of plaintiff bank testifies that this was a renewal note, and upon receipt of this note a former note given by Johnson and Conklin was returned to them. The note upon which the plaintiff brings suit thus appears to have been a note owned by the State Bank of Minatare, and, without any indorsement whatever by that bank, to have been held by the plaintiff bank as collateral to a note of two individuals who were directors of the State Bank of Minatare.

The testimony of the defendant is that he went into the State Bank of Minatare on the evening of January 18, 1929, and was waited upon by L. F. Johnson, the president thereof. He first deposited a draft from the Stock Yards National Bank for $6,148.92, the slip being dated January 19. Defendant then said he wanted to pay off this $2,500 note, and asked Mr. Johnson to figure up the interest. The president reached in the note pouch and took out a paper and figured interest, and said that the total amount due was $2,558.34. The defendant then asked the president to write out a check for it, which he did, neglecting to insert the date, and passed it through the window, and the defendant signed his name and shoved it back, and then asked for his note. The defendant testified: "Right at the time I gave him the check I asked him for the note and he said 'this ain't it, it is just a copy of it.' * * * He told me that he had sent it out and that he would get it."

The bank statement shows that defendant Redding had a balance in his account on January 31, 1929, of $7,966.58, but the bank had not cashed his check, although he had sufficient funds at all times to meet it, but the bank simply held it among the cash items until the bank failed and was taken over by the department of trade and commerce February 23, 1929, since which time the defendant has never filed any claim with the receiver for that part of his deposit covered by the check of $2,558.34 which he gave in full settlement of the note in suit.

The evidence shows that not until after the president had possession of his check did the defendant know that the payee bank did not have his note in its note pouch, ready to deliver to him the moment he paid it off.

In examining the Compiled Statutes of Nebraska, 1929, we find that section 62-301 provides generally that, if a negotiable instrument is payable to order, it is negotiated by the indorsement of the holder completed by delivery.

"A negotiable instrument payable to the order of a person can be transferred, so as to preserve the negotiable character of the instrument, only by the indorsement of the holder completed by delivery. The indorsement must be in writing on the instrument itself, or upon a paper attached thereto." *Jackson State Bank v. Laurel Nat. Bank,* 111 Neb. 744; Ann. 56 A. L. R. 921.

By "a paper attached thereto" is not meant an assignment which may be written as a separate instrument, but only such a paper as an allongé, which was defined under the old law merchant as a strip of paper tacked, that is, stapled, or firmly pasted, onto the instrument so as to become a part of it. That is to say, that when the back of a promissory note is filled with indorsements, then another sheet of similar size may be attached thereto for the sole purpose of furnishing room for further necessary indorsements.

In *Gookin v. Richardson,* 11 Ala. 889, 46 Am. Dec. 232, decided in January, 1847, it was held: "According to the principles of · mercantile law, a bill or promissory note

payable to a certain person or his order, could only be transferred by indorsement. * * * A mere assignment of such paper without an indorsement, will invest the holder with the same rights only, as he would acquire upon an assignment of a bill not negotiable; and if the *beneficial* interest be transferred, but there has been no indorsement, the action must be brought in the name of the payee."

However, in Nebraska, section 20-302, Comp. St. 1929, specifically provides that such an action may be brought by the assignee in his own name; but, aside from that one point, this early holding of the Alabama court is strictly in point. See *Brown v. Janes*, 130 N. Y. Supp. 333.

"Where a negotiable note is transferred by delivery and assignment, the holder is nothing more than an assignee of a chose in action, and * * * takes the instrument subject to any defenses existing in favor of the makers and against the assignor before notice to the makers of the assignment." *Hecker v. Boylan*, 101 N. W. 755 (126 Ia. 162). See *Smith v. Nelson Land & Cattle Co.*, 212 Fed. 56.

Where a negotiable instrument, payable to order, is transferred only by delivery and assignment, the transferee, being the one who has by such means become possessed of the instrument, has the rights therein of a chose in action. It is subject to equities against the assignor arising in favor of the maker before he has notice of the assignment.

It has often been held that the transferee is entitled to an unqualified indorsement unless the parties have agreed to the contrary. *Lawrence v. Citizens State Bank*, 113 Kan. 724; *Queensboro Nat. Bank v. Kelly*, 48 Fed. (2d) 574, 87 A. L. R. 1172.

The Nebraska law upon the effect of a transfer without indorsement is found in section 62-320, Comp. St. 1929, which reads: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer

had therein and the transferee acquires, in addition the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

This is the exact language of section 49 of the original negotiable instruments law as recommended by the National Conference of State Boards of Commissioners for promoting uniformity of legislation in the United States, and it was first adopted into our Nebraska law as section 49, art. 3, ch. 83, Laws 1905, and has never been amended.

An exhaustive discussion of this section will be found in Brannan, Negotiable Instruments Law (5th ed.) sec. 49, which is authority for saying that the transferee, without indorsement of a note payable to order, cannot be a holder in due course, as he is neither a "holder" because not a payee or indorsee, not a bearer because the instrument is not payable to bearer.

While we have not discussed it, there is a serious question whether there was a valid transfer to the plaintiff bank of the note in suit, which was the property of the State Bank of Minatare. Could there have been a valid and legal transfer of an unindorsed bank note to secure the individual indebtedness of two of the bank's officers?

"A note which is payable to order, and which has not been indorsed, and has come into the hands of a third person by assignment merely, is subject to any defenses which could have been interposed against the original payee." *Emerson-Brantingham Co. v. Brennan*, 35 N. Dak. 94. "A negotiable promissory note may be transferred by a separate distinct assignment thereof, but in such case the transferee will not be protected as against infirmities or defenses which might be shown as against the assignor." *Gaylord v. Nebraska Savings & Exchange Bank*, 54 Neb. 104. Section 62-408, Comp. St. 1929, provides that a negotiable instrument "in the hands of any holder other than a holder in due course * * * is subject to the same defenses as if it were nonnegotiable."

Thus, in the case at bar we have a note belonging to the State Bank of Minatare put up as collateral to the note of L. F. Johnson and L. L. Conklin, without any indorsement whatever thereon. It is clear that the plaintiff could not under these circumstances be a holder in due course.

While this court held in *Davis v. Polak,* 126 Neb. 640, "Ordinarily, no duty rests upon the indorsee or holder of a negotiable note or bond to notify the maker of such ownership; but the duty is upon the maker to seek out the holder of such instrument when making payment," yet in the case at bar the plaintiff is but the holder of an unindorsed note, and as such has no greater rights therein than a mere assignee. The plaintiff bank, therefore, held this note subject to all the original equities between the parties arising before notice of assignment was brought to the maker.

Other authorities sustaining our holding are: *Bank of Bromfield v. McKinley,* 53 Colo. 279; 3 R. C. L. 987, sec. 196; *Gookin v. Richardson,* 11 Ala. 889; Comp. St. 1929, sec. 62-408; *Peterson v. Swanson,* 176 Minn. 246; *Marling v. FitzGerald,* 138 Wis. 93.

The plaintiff calls to our attention our decision in *First Nat. Bank of Cripple Creek v. Redding,* 121 Neb. 642, in which case we held that the giving of an undated check by this same defendant, made out at the same time as the check in the case at bar, that is, immediately after depositing his draft for $6,148.92, was not a payment which released Mr. Redding from a note held by the Cripple Creek bank, and they insist that the two cases are identical, and that the judgment of the trial court in the case at bar should be reversed because of this former decision. There appears to be this vital difference between these two cases, namely, that before the State Bank of Minatare sold and delivered the note before maturity to the First National Bank of Cripple Creek, it indorsed the note, "Without recourse, State Bank of Minatare, By L. F. Johnson Pt.," thus making the Cripple Creek bank an indorsee and holder in due course for value before maturity,

while in the case at bar no indorsement of any kind was placed upon the note.

It can be said that the plaintiff bank can only assert such rights as the State Bank of Minatare can assert; and the defendant paid it off in full, with interest, to that bank.

The maker of a negotiable note which has been transferred without indorsement may pay the same to the original payee where he does so without actual notice of the assignment of the note. Such a payment before notice discharges the obligation.

In *Conroy v. Garries*, 126 Neb. 730, we held: "The fact that the party to whom payment is made * * * did not have the same in his possession is not conclusive upon the question of his authority to collect, but is a circumstance to be considered upon that question." Cases supporting this view are: *Hatfield v. Jakway*, 102 Neb. 831; *Garnett v. Meyers*, 65 Neb. 287; *Bliss v. Falke*, 125 Neb. 400.

In *Dodd v. Brott*, 1 Minn. 270, 66 Am. Dec. 541, that court in 1856 said: "The simple question arises whether a debtor who pays a debt in good faith to his creditor can be made liable to pay it a second time to his creditor's assignee? If such a rule of law existed, I should not, for a moment, feel bound to follow it. It is repugnant to common sense and every principal of justice."

Where an instrument was transferred to the plaintiff after maturity, for value and without indorsement, it was held that subsequent payment to the transferer discharged the instrument. *Citizens Bank & Trust Co. v. Chase*, 151 Va. 65.

"The maker of a note and mortgage not negotiable, who has no notice of a transfer of the papers, may satisfy the same by payment to the payee named therein." *Garnett v. Meyers*, 65 Neb. 287. "Payment of a promissory note to the payee by the maker, without notice of a transfer of the note after maturity, is a valid defense to an action by the indorsee." *Haywood & Son v. Seeber*, 16 N. W. 727 (61 Ia. 574). See *Consterdine v. Moore*, 65 Neb. 296; *Swan v. Craig*, 73 Neb. 182.

While opinions may be found to the contrary, yet we believe that the clear weight of authority sustains the judgment of the district court, which is hereby

AFFIRMED.

ROSE, J., dissenting.

I do not concur in the affirmance of the nonsuit below. In my view of the record and the law, defendant did not prove any defense to the case made by plaintiff. It seems to me there should have been a judgment against defendant for the full amount of plaintiff's claim.

The instrument on which plaintiff brought suit is· a negotiable promissory note for $2,500 dated October 5, 1928, and payable December 5, 1928. It was executed by defendant, the debtor and maker, and delivered to the State Bank of Minatare, the creditor and payee. In banking transactions the Plattsmouth State Bank, plaintiff, for value paid to and received by the State Bank of Minatare, the original payee, became the owner and holder of the note without indorsement October 8, 1928, and never surrendered possession or parted with title. Defendant knew, or was chargeable with notice, that the note was transferable by delivery before due and he gave currency to it as such in a commercial transaction. He owed to plaintiff, the owner and holder, the debt evidenced by the note. His purported defense is that he paid his obligation to the State Bank of Minatare, the original payee, without notice of the assignment or transfer. On the undisputed facts he should be held amenable to the law which declares:

"Ordinarily, no duty rests upon the indorsee or holder of a negotiable note or bond to notify the maker of such ownership; but the duty is upon the maker to seek out the holder of such instrument when making payment." *Davis v. Polak*, 126 Neb. 640.

Defendant's obligation on the note was to the owner and holder of it and not to the State Bank of Minatare which had already received value therefor from its assignee, plaintiff.

Defendant did not by his own testimony or otherwise

show any legal right or authority to pay to the State Bank of Minatare the debt evidenced by the note. That bank was not the owner or holder or an agent authorized to receive payment. It was closed on account of insolvency February 23, 1929. Chargeable with notice that the note was transferable by delivery before due, and without reason to assume it was still held by the State Bank of Minatare, defendant's explanation of his purported payment without notice of the assignment may be summarized as follows: January 18, 1929, he deposited in the State Bank of Minatare a draft for $6,148.92; gave that bank his undated personal check at night for $2,558.34, January 18 or 19, 1929, to pay the 2,500-dollar note with interest; asked for the note when tendering the check, or immediately thereafter, and was told it had been "sent out."

The evidence does not tend to show that the State Bank of Minatare charged the banking account or the deposit of defendant with the amount of the check before he knew the note was not in possession of the original payee and could not be surrendered. He knew he was entitled to the note when making payment, because he asked for it. In any event he could have protected both himself and plaintiff by simply demanding the return of his check, or, in the event of a refusal, by an order in writing to stop payment of the check. This required only ordinary business sense. The only proper inference is that defendant put his trust in the State Bank of Minatare and made it his agent to pay his debt and to procure for him the return of the note.

Plaintiff did not perpetrate on defendant any fraud in the transactions connected with the note, or trust the State Bank of Minatare to collect the debt due, or authorize such collection, or create by negligence or other means a method of misleading or wronging defendant. I have an abiding conviction that the record presents a typical case for the application of the following doctrine:

"Where one of two parties to transactions must suffer a loss through the misconduct or the wrongs of a third

person, the superior equities will be determined from all of the material circumstances, and the burden will be allowed to fall where equity and justice place it." *Omaha Elevator Co. v. Chicago, B. & Q. R. Co.,* 104 Neb. 566. Followed in *Johnson v. Kindig,* 127 Neb. 360. See, also, *Rehmeyer v. Lysinger,* 109 Neb. 805; *First Nat. Bank v. First Nat. Bank,* 111 Neb. 441; *Deleski v. Peters Trust Co.,* 115 Neb. 547; *Nebraska State Bank v. May,* 117 Neb. 262.

Entertaining these views, I respectfully dissent, fearing that the rules of law announced by the majority, when applied to the undisputed facts in the case at bar, may become disturbing factors in commercial and banking law.

RAPER, District Judge, concurs in this dissent.