[Civ. No. 23473. Fourth Dist., Div. Two. May 12, 1981.]

HELEN A. PRIBUS, Plaintiff and Respondent, v.
PHILIP L. BUSH, Defendant and Appellant.

COUNSEL

Howser, Gertner & Brown and David L. Sanner for Defendant and Appellant.

Stephen D. Johnson for Plaintiff and Respondent.

OPINION

**MORRIS, J.**—Defendant appeals from a judgment enjoining the foreclosure of a trust deed on plaintiff's house, and ordering the cancellation of a promissory note signed by plaintiff. Judgment was entered against defendant after the trial court concluded that he was not a holder in due course.

*Facts*

Charles Pribus, the son of Helen Pribus (plaintiff), owed $126,500 to Ford and Mary Williams. At Charles' request, plaintiff executed a promissory note for $126,500 and a trust deed on plaintiff's house to secure the note, both in favor of the Williams. Charles delivered the trust deed to Ford Williams, who caused it to be recorded. The note was never delivered. Ford Williams then induced the plaintiff to execute a second promissory note for $126,500, the subject of this appeal. The trial court made the finding, which is not now challenged, that this note was executed on the false representation by Williams that he would hold the note and would make no use of it. The court also made the uncontroverted finding that plaintiff received no consideration for the note.

Within a few months, Williams bought from Philip Bush (defendant) an option to purchase Bush's contractual rights to buy an apartment complex in Texas. As part of Williams' written agreement with defendant Bush, Williams assigned the trust deed on plaintiff's house to defendant and transferred to defendant the promissory note which Williams had induced plaintiff to execute. Stapled to the note was a paper, signed by Ford and Mary Williams, which stated: "For a valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby assign the attached Note to PHILLIP L. BUSH." There was sufficient space on the note itself to write an indorsement in the words that were written on the paper stapled to the note.

After an unsuccessful effort to collect on the promissory note, defendant filed a "Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust." Plaintiff responded by initiating the present action, seeking "cancellation of instrument, declaratory relief, and injunction."

Following a trial on the merits, the court found for the plaintiff. Although the promissory note was a negotiable instrument payable to order, the court held that the plaintiff could assert the defenses of fraudulent inducement and lack of consideration against the defendant because he was not a holder in due course.[1] The court concluded that the Williams' indorsement of the promissory note was not sufficient for effective negotiation, because 1) the paper attached to the note was ineffective as an indorsement because there was sufficient space to write the indorsement on the note itself, and 2) the Williams retained an interest in the note. Judgment was entered ordering the cancellation of the promissory note and enjoining the defendant from foreclosing on the trust deed. This appeal followed.

*Discussion*

California Uniform Commercial Code section 3302, subdivision (1) provides,[2] "A holder in due course is a holder who takes the instrument a) For value; and (b) In good faith; and (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." In the present case, the trial court did not question defendant's status as a holder in due course because of any failure to satisfy the value, good faith, or no notice requirements. Rather, the court concluded that defendant is not a holder in due course because he is not a holder at all, an essential prerequisite to qualifying as a holder in due course. A holder is "a person who is in possession of ... an instrument ..., issued or indorsed to him ...." (§ 1201, subd. (20).) The trial court ruled that the Williams' signature on the paper attached to the promissory note did not qualify as an indorsement be-

---

[1]California Uniform Commercial Code section 3305 provides, in part: "To the extent that a holder is a holder in due course he takes the instrument free from

"      .      .      .      .      .      .      .      .      .      .      .      .

"(2) All defenses of any party to the instrument with whom the holder has not dealt except [certain defenses that are not applicable in this case]."

Section 3306 provides, in part: "Unless he has the rights of a holder in due course any person takes the instrument subject to

"      .      .      .      .      .      .      .      .      .      .      .      .

"(b) All defenses of any party which would be available in an action on a simple contract; and

"(c) The defenses of want or failure of consideration (Section 3408), ..."

[2]All references are to the California Uniform Commercial Code, unless otherwise stated.

cause there was adequate space for the indorsement on the note itself.[3] We affirm the judgment.

Section 3202, subdivision (2) states, "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Thus, the code does not say whether or not such a paper, called an "allonge," may be used when there is still room for an indorsement on the instrument itself. Nor has any reported California case dealt with this issue under the code.[4] The code does, however, instruct us as to where to look for the law with which to resolve the issue. Section 1103 states that "[u]nless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant ... shall supplement its provisions," and that section's Uniform Commercial Code comment notes "the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act." Therefore, since the Commercial Code has not addressed the issue, we decide the present case according to the rules on allonges of the law merchant.[5]

---

[3]The court held the signature ineffective as an indorsement on the alternative ground that the Williams did not transfer their entire interest in the note to defendant. Section 3202, subdivision (3) provides, "An indorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports to be of less it operates only as a partial assignment."

The Williams' assignment did not "purport to be of less." However, there was parol evidence that the Williams were to be paid any excess collected on the note over and above $105,000.

Since we uphold the trial court's determination that the attached signature did not qualify as an indorsement, it is unnecessary for us to consider the competency or sufficiency of the evidence to support the finding that there was a partial assignment.

[4]The few California cases which have cited section 3202, subdivision (2) have involved negotiable instruments which were not indorsed on the instruments or on an attached paper, but were transferred by a separate document. The transferees in those cases were, therefore, not holders. (*Security Pacific Nat. Bank* v. *Chess* (1976) 58 Cal. App.3d 555, 562 [129 Cal.Rptr. 852]; *Wright* v. *Bank of California* (1969) 276 Cal. App.2d 485, 490 [81 Cal.Rptr. 11]; *Lopez* v. *Puzina* (1966) 239 Cal.App.2d 708 [49 Cal.Rptr. 122, 19 A.L.R.3d 1291].)

[5]An excellent discussion of the history and development of the law merchant appears in *Bank of Conway* v. *Stary* (1924) 51 N.D. 399 [200 N.W. 505, 508-509, 37 A.L.R. 1186]. The law merchant is there defined as "a system of law that does not rest exclusively on the institutions and local customs of any particular country, but consists of certain principles of equity and usages of trade which general convenience and a common sense of justice have established to regulate the dealings of merchants and mariners in all the commercial countries of the civilized world. [Citations.] ... 'This lex mercatoria or common law of merchants is of more universal authority than the common law of England.' [Citation.]" (*Id.*, 200 N.W. at p. 508.)

Although the cases are not unanimous, the majority view is that the law merchant permits the use of an allonge only when there is no longer room on the negotiable instrument itself to write an indorsement. (See generally Annot., Indorsement of Negotiable Instrument By Writing Not On Instrument Itself (1968) 19 A.L.R.3d 1297, 1301-1304; Annot., Indorsement of Bill or Note by Writing Not On Instrument Itself (1928) 56 A.L.R. 921, 924-926.) Typical of the majority position is *Bishop* v. *Chase* (1900) 156 Mo. 158 [56 S.W. 1080]. There it was held that the general rule is that an instrument could be indorsed only by writing on the instrument itself, but that an exception to the rule allows the use of an attached paper "when the back of the instrument is so covered as to make it necessary." (*Id.*, 56 S.W. at p. 1083.) Thus, the court invalidated an attempted indorsement by allonge when "there was plenty of room upon the back of the note to have made the indorsement, and the only excuse for not doing so was that it was more convenient to assign it on a separate paper." (*Id.*, 56 S.W. at p. 1084.)[6]

As the *Bishop* case indicates, the law merchant rule on allonges was developed as a refinement of the basic rule that an indorsement must be on the instrument itself. This basic rule must have become impractical when strictly applied in certain multiple indorsement situations, due to the finite amount of space on any given instrument. The allonge, then, was apparently created to remedy the inconveniences of the basic rule, not as an alternative method of indorsement. Support for this analysis is found in *Folger* v. *Chase* (1836) 35 Mass. (18 Pick.) 63. There, the Massachusetts Supreme Court dealt with an allonge indorsement as a case of first impression. The indorsement had been made on "a paper attached to the back of the note by a wafer" because the back of the note was covered with previous indorsements. The defendants, citing the basic rule, contended that no indorsement had been made. The court disagreed. "The objection is, that such an indorsement is not sanctioned by custom; but we think it is supported by the reasons on which the custom was originally founded. Bills of exchange and promissory notes were indorsed on the back of the bills and notes, because it was a conve-

---

[6]While not determinative of this case, it is interesting to note that the dictionaries support the majority position. Black's Law Dictionary (4th ed. 1951) page 100, defines "allonge" as "[a] piece of paper annexed to a bill of exchange or promissory note, on which to write endorsements for which there is no room on the instrument itself." Webster's Third New International Dictionary (1964) page 57, gives a similar definition: "a slip of paper attached to a bill of exchange or similar document to provide space for additional endorsements."

nient mode of making the transfer, and in order that the evidence thereof might accompany the note. Such an indorsement as this will rarely happen, and no authority to support it could reasonably be expected; but there is no authority against it." (*Id.*, at p. 67.)[7]

The minority position is best expressed in *Crosby* v. *Roub* (1863) 16 Wis. 616, 626-628.[8] There it was said that "the usual reason stated for using [an allonge] is, that there is no longer room on the note to make the indorsement. But this does not mean that there must be an actual physical impossibility to write the indorser's name on the original paper. On the contrary, the usage of the mercantile law is, as Chief Justice Marshall says, 'founded in convenience.' And all that its spirit or its letter requires is, that when it is inconvenient to write on the back of the note the real contract between the vendor and the vendee, which, if so written, would pass the title, it may be written on another paper and attached to it with like effect." (*Id.*, at p. 626.)[9] The *Crosby* case was considered, but rejected, in a number of majority jurisdictions. (See, e.g., *Bishop* v. *Chase, supra*, 56 S.W. at pp. 1083-1084; *Doll* v. *Hollenback* (1886) 19 Neb. 639 [28 N.W. 286, 288].)

---

[7]We believe that inherent in the rationale underlying the majority rule is the concern for preventing fraud. An allonge, even though "so firmly affixed ... as to become a part" of the instrument, may be detached more easily than an indorsement on the instrument itself may be removed. Additionally, a person's signature, innocently made upon an innocuous piece of paper, could be fraudulently attached to a negotiable instrument as a purported indorsement. The majority rule, while not eliminating these methods of fraud, certainly reduces the opportunities for their use.

[8]*Crosby* and *Heister* v. *Gilmore* (Pa. 1862) 5 Phila. 62 are the leading minority cases. However, the current validity of both, even in their own states, is questionable. In *Bergmann* v. *Puhl* (1928) 195 Wis. 120 [217 N.W. 746, 747-748, 56 A.L.R. 915], even though citing *Crosby*, the Wisconsin Supreme Court stated the majority rule that '[t]he only exception to the rule that an indorser becomes such only by placing his signature upon the instrument is that where the back of the instrument has been covered by indorsements or other writing, leaving no room for further indorsements, a strip of paper called an 'allonge' may be attached to the instrument and subsequent indorsements may be written thereon." And, in *James Talcott, Inc.* v. *Fred Ratowsky Associates, Inc.* (1965) 84 Dauph. 258 [38 Pa. D. & C.2d 624, 2 U.C.C. R.S. 1134, 1137], a Pennsylvania Court of Common Pleas expressed doubt about the continued vitality of *Heister* and refused to follow it.

[9]It is debatable whether even the *Crosby* court would have approved the use of an allonge in the present case. *Crosby* does not state that an allonge can be used unconditionally. Instead, the wording on the allonge had to be such that "it would be a contract which, if on the note would pass the title, *and that for some reason it is inconvenient to write it on the note*." (16 Wis. at p. 627, italics added.) In the present case, no showing of inconvenience was made. Indeed, the trial court found that all that was written on the allonge would have fit on the promissory note.

The majority view interpretation of the law merchant rule of allonges was adopted statutorily in California. When the Civil Code was enacted in 1872, it contained these two provisions: 1) section 3109—"One who agrees to indorse a negotiable instrument is bound to write his signature upon the back of the instrument, if there is sufficient space thereon for that purpose," and 2) section 3110—"When there is not room for a signature upon the back of a negotiable instrument, a signature equivalent to an indorsement thereof may be made upon a paper annexed thereto."[10]

These Civil Code sections were in force for 45 years until California adopted the Uniform Negotiable Instruments Act. The act, like its successor, the Uniform Commercial Code, did not state whether or not an allonge could be used when there was still room for an indorsement on the instrument itself. Section 31 of the act (former Civ. Code, § 3112) stated in part, "The indorsement must be written on the instrument itself or upon a paper attached thereto." (Stats. 1917, ch. 751, § 1, p. 1538.) However, also like the Uniform Commercial Code, the Uniform Negotiable Instruments Act intended prior law not in conflict with the act to supplement the act. Former Civil Code section 3266d stated in part, "In any case not provided for in this title the rules of the law merchant shall govern." (Stats. 1921, ch. 194, § 12, p. 215.) Thus, it has been held that the act was "but a statutory affirmation of the rule of the old law merchant" that an allonge "was allowable only when the back of the instrument itself was so covered with previous indorsements that convenience or necessity required additional space for further indorsements." (*Clark* v. *Thompson* (1915) 194 Ala. 504 [69 So. 925, 926]; see also *Plattsmouth State Bank* v. *Redding* (1935) 128 Neb. 268 [258 N.W. 661, 663].)

■ We conclude that the majority view of the law merchant relating to allonges is the better reasoned one, and is the view adopted by the Legislature.[11] It follows, then, that the assignment by allonge of plain-

[10]*Hays* v. *Plummer* (1899) 126 Cal. 107, 110 [58 P. 447] is cited by plaintiff as supporting the majority position. This is misleading. *Hays* was merely reiterating the California law on allonges as expressed in the Civil Code at that time. The issue at bar in the present case was not before the court in *Hays*. In that case, a promissory note was assigned by means of a separate written instrument. The court held that the transferee of the note was not a holder in due course, but only an assignee.

[11]We have found four Uniform Commercial Code cases that discuss the allonge issue which is presented here. Three of the cases state the majority position. (*Shepherd Mall St. Bank* v. *Johnson* (Okla. 1979) 603 P.2d 1115, 1118; *Tallahassee Bank & Trust Company* v. *Raines* (1972) 125 Ga.App. 263 [187 S.E.2d 320, 321]; *James Talcott,*

tiff's promissory note by the Williams to the defendant was ineffective as an indorsement, since there was sufficient space on the note itself for the indorsement. There having been no indorsement of the note, the defendant is not a holder in due course and, therefore, takes the note subject to the defenses that plaintiff has against the Williams. (§ 3306.) The judgment is affirmed.

Kaufman, Acting P. J., and Garst, J.,* concurred.

*Inc.* v. *Fred Ratowsky Associates, Inc., supra,* 2 U.C.C. R.S. at p. 1137.) The fourth case did not decide the issue. (*Estrada* v. *River Oaks Bank & Trust Co.* (Tex.Civ.App. 1977) 550 S.W.2d 719, 725.)

*Assigned by the Chairperson of the Judicial Council.