In re Charles M. STANLEY, Debtor.

No. BK–S–11–15621–BAM.

United States Bankruptcy Court, D. Nevada.

Heard April 27, 2012.

Signed Oct. 12, 2012.

Arun Gupta, Jeffrey J. Whitehead, Black & Lobello, Las Vegas, NV, for Debtor.

**OPINION OVERRULING OBJECTION TO AMENDED PROOF OF CLAIM AND GRANTING RELIEF FROM THE AUTOMATIC STAY**

BRUCE A. MARKELL, Bankruptcy Judge.

## I. FACTS

### A. The Home Loan and Stanley's Bankruptcy Filing

On August 24, 2006, debtor Charles M. Stanley ("Stanley"), together with his non-debtor spouse,[1] executed a promissory note (the "Note"). The Note was in the principal amount of $383,000, and called for monthly payments of $2,591.45. Countrywide Home Loans, Inc. ("Countrywide")

---

1. Beth E. Stanley also signed the Note and Deed of Trust as a co-borrower. She is not a codebtor in this bankruptcy case nor has she participated in these proceedings.

was named payee. Stanley incurred this debt to finance the purchase of a house in Las Vegas, Nevada (the "Property").

To secure his obligations under the Note, Stanley also executed a deed of trust encumbering the Property (the "Deed of Trust"). The Deed of Trust identified Countrywide as the lender, but nominated Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary.

Sometime after loan origination, the beneficial interest in the Note was sold to the CWALT, Inc., Alternative Loan Trust 2006–34 ("CWALT Trust"). Bank of New York Mellon, f/k/a the Bank of New York, is the trustee for the certificateholders of that trust ("BONY").

On August 18, 2009, MERS executed a "Corporation Assignment of Deed of Trust Nevada" in favor of BONY (the "Assignment"); the Assignment was recorded on September 2, 2009. It assigned to BONY:

> All beneficial interest under that certain deed of trust dated 08/24/2006, executed by: Charles M. Stanley, and Beth E. Stanley, husband and wife as joint tenants, trustor: to Recontrust Company, N.A., trustee and recorded as instrument no. 0004826 on 08/29/2006, in book 20060829, of official records in the coun-

ty recorder's office of Clark County, in the state of Nevada.

> Describing the land therein: as more fully described in said deed of trust. Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said deed of trust/mortgage.

(P.O.C. No. 7–1, Part 2.)[2] At some point, Countrywide merged into or became an affiliate of Bank of America, N.A. ("BofA"), and all of Countrywide's systems related to mortgage loans became BofA's property.

### B. The Bankruptcy Proceedings

■ Stanley filed Chapter 13[3] bankruptcy on April 14, 2011. (Dkt. No. 1.) On October 24, 2011, BONY moved for relief from the automatic stay pursuant to Section 362(d)(2). (Dkt. No. 24.) In its motion, BONY alleged that: the total encumbrances against the Property were $458,967.04; that the lien-free value of the Property was $321,000; and that the total amount of postpetition arrears owed BONY were $17,158.14. (Id.) In support of the motion, BONY attached copies of: the Note, which had been endorsed in blank;[4] a rate improvement addendum to

---

**2.** All references to "P.O.C. No." are to the Proof of Claim number as assigned on the claims register for documents filed electronically through CM/ECF. Likewise, all references to "Dkt. No." are to the ECF number as assigned on the docket.

**3.** Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, FED. R. BANKR.P. 1001–9037; and all "Evidence Rule" references are to the Federal Rules of Evidence, FED.R.EVID. 101–103. All references to the "UCC" are references to sections of the 2007 Official Version of the Uniform Commercial Code.

**4.** The endorsement appeared as a separate page in BONY's motion, and thus it could not be determined whether it was a separate page—an allonge—or a copy of the reverse side of a page of the Note. At the evidentiary hearing, the court was able to examine the Note and found that it was endorsed on the reverse side of the last page of the original Note. (Ex. J; Hr'g Tr. 72:9–73:14, Apr. 27, 2012, Dkt. No. 62.) This endorsement is manually signed (not stamped) by Michele Sjolander, identified underneath her manual signature as an executive vice president of Countrywide. (Id.)

Under the law merchant, the majority view was that an allonge was ineffective to transfer a negotiable instrument unless there was no more room on the reverse side of the note for

the Note; the Deed of Trust; a planned unit development rider to the Deed of Trust; and the Assignment. (*Id.*)

■ On November 15, 2011, Stanley filed an opposition to BONY's motion for relief from stay. (Dkt. No. 29.) Stanley challenged BONY's standing to move for relief from stay. Specifically, he challenged the purported allonge to the Note, contending that it was never properly affixed to the Note. (*Id.* at 7.)[5] He also contended, without citation to legal authority, that:

> [W]hen the Bank of New York filed its Motion for Relief from Automatic Stay, it attached thereto a separate, unauthenticated, inadmissible alleged Allonge purporting to bear the signature of one Michele Sjolander, an ostensible Executive Vice President of Countrywide Home Loans, Inc. (Dkt. 24, page 12.) This alleged Allonge is undated, has no dated signature and is not notarized.

(*Id.* at 2.) Stanley also challenged the validity of the Assignment. (*Id.* at 2–3.) However, the opposition contains no arguments as to whether BONY made the requisite showing with respect to any lack of equity in the Property.[6]

### C. The Proof of Claim and the Objection

On June 8, 2011, BAC Home Loans Servicing LP ("BAC"), acting as BONY's servicing agent, filed a proof of claim in the amount of $444,323.06. (P.O.C. No. 7.) In support of the Proof of Claim, BAC attached a copy of: the Note (albeit without a copy of the reverse of the last page with the endorsement in blank); the Deed of Trust; the planned unit development rider; and the Assignment. (*Id.*)

On February 21, 2012, over eight months later and after BONY filed its motion for relief from stay, Stanley objected to the proof of claim. (Dkt. No. 37.) In the objection, Stanley again challenged BONY's status as a secured creditor. (*Id.* at 2–4.) Stanley also asserted that the Note and Deed of Trust had been irreparably split, the result of which was that the debt obligations under the Note were unenforceable "against the Debtor and the Debtor's property." (*Id.*)[7]

---

additional endorsements. *Pribus v. Bush*, 118 Cal.App.3d 1003, 1008, 173 Cal.Rptr. 747 (1981) ("the majority view is that the law merchant permits the use of an allonge only when there is no longer room on the negotiable instrument itself to write an indorsement."). The 1992 amendments to UCC Article 3 changed this rule to allow an allonge to be effective so long as it was "affixed" to the instrument. UCC § 3–204(a).

5. As outlined in the previous note, in a world of electronic pages, it is not possible to determine whether a page presented in an electronically-filed motion such as BONY's was a separate physical page (and hence an allonge) or a copy of the reverse of the original page of the document copied.

6. It was BONY's burden to establish a lack of equity. 11 U.S.C. § 362(g)(1). To satisfy this

burden, BONY relied on Stanley's bankruptcy schedules for evidence of the Property's value, thereby meeting its burden of going forward with some evidence. Given Stanley's lack of response on this issue, the court accepts BONY's contention of a lack of equity; that is, it finds that BONY has met its burden of persuasion on this point.

7. Put another way, Stanley challenged the bank's right to enforce the Deed of Trust, asserting that "the Assignment did not transfer the Note 'together with' its otherwise corresponding Deed of Trust[.] The Assignment transferred only the Deed of Trust without its otherwise corresponding Note." (Dkt. No. 37 at 3.) This, Stanley argues, effected a separation of the note and the Deed of Trust, rendering the bank's claim "unenforceable against the Debtor and the Debtor's property." (*Id.* at 3–4.)

Finally, Stanley challenged the validity of the endorsement by allonge "since it was improperly handled," arguing that because BAC "failed to establish the necessary proof for the Note and the alleged Allonge to be admissible in evidence, they cannot be considered by the Court." (*Id.*)

The court heard both the motion for relief from stay and the objection to claim in a consolidated hearing. At the hearing, Stanley introduced the following exhibits into evidence: (i) a copy of the Proof of Claim and supporting documentation; and (ii) three screen shots, dated March 29, 2012, March 30, 2012, and April 13, 2012, respectively, from BofA's collateral indexing and imaging system. (Hr'g Tr. 4:3–6, 47:14–15, Apr. 27, 2012.) Stanley also offered the testimony of William McCaffrey, an individual with 35 years of experience in the mortgage industry, as to the true ownership and possession of the Note. (*Id.* at 19.)[8]

BONY introduced the following exhibits into evidence: (i) a copy of Stanley's voluntary petition; (ii) a copy of the Deed of Trust; (iii) a copy of the Assignment; (iv) Stanley's Schedule A; (v) further copies of certain screen shots from BofA's collateral indexing and imaging system; and (vi) the original Note. (*Id.* at 4:7–14, 47:16–17, 61:8–9, 65:4–5, 76:3–4.) The bank also offered the testimony of Neil Patak, an assistant vice president at BofA.[9] (*Id.* at 49.)

The hearing lasted a half day. The parties submitted post-hearing briefs on June 4, 2012, and the matter was then deemed submitted for decision. (Dkt. Nos. 69, 70.)[10]

## II. DISCUSSION

### A. *Relationship Between BofA, BAC, and BONY*

Before proceeding further, it is important to disentangle the relationships between and among BofA, BAC, and BONY. In this proceeding, BONY filed the motion to lift stay while BAC filed the Proof of Claim. (Dkt. No. 24; P.O.C. No. 7.) BONY is the assignee under the Assignment, not BAC or BofA. At the evidentiary hearing, the only live witness for the creditor was Mr. Patak, who is an assistant vice president of BofA, but who also works for BAC. (Hr'g Tr. 49:21–50:20, 83:1–4, Apr. 27, 2012.)

The relationships are not difficult to puzzle out. First, BAC is a subsidiary of BofA, or at least is directly controlled by

---

8. Before the hearing, BONY filed a motion in limine seeking to exclude any testimony by William McCaffrey as an expert or with respect to the ownership of the Note. The court sustained the motion, finding that Mr. McCaffrey had no personal knowledge as to the ownership or possession of the Note. The court did, however, allow the debtor to call Mr. McCaffrey as a rebuttal expert to the extent he had knowledge, skill, experience, or training on the customs and practices in the securitization industry that might bear on the issues being tried. *See* Fed.R.Evid. 702.

9. Mr. Patak became employed with BofA after it absorbed Countrywide. (Hr'g Tr. 128:22–24, Apr. 27, 2012.) He also worked for BAC and assisted in preparing the Proof of Claim. (*Id.* at 83:1–9.)

10. In his post-hearing brief, Stanley refers to a letter regarding the merger of BofA and Countrywide. (Dkt. No. 69 at 8.) Stanley cites Evidence Rule 201 as authority for this court to take judicial notice of this letter, which was filed in another case not before this court. (*Id.* at 9.) Stanley's prior papers made no mention of this document, nor was this document admitted into evidence at the hearing. While Evidence Rule 201 permits the court to take judicial notice at any stage of the proceeding, the court made it clear to the parties that the hearing would be their final opportunity to present their evidence. Accordingly, the court denies Stanley's request.

BofA. As the testimony of Mr. Patak demonstrated, BofA and BAC share many things, including employees and duties with respect to those mortgage notes that they have been asked to service. This mutual agreement that BAC and BofA shall act for one another establishes that BAC is an agent of BofA, as demonstrated by, among other things, BAC's use of BofA's tracking and indexing system for mortgage notes. *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).

BONY's role as the trustee for the certificateholders of the CWALT Trust has not been seriously challenged, nor has BONY's authority to act for that trust. As a result, BONY is the agent for the CWALT Trust.

The relationship between BONY and BofA is more subtle. Although BONY did not move to have a copy of the relevant pooling and servicing agreement admitted into evidence, Mr. Patak's testimony revealed that BofA's role was that of a servicer of the Note for the CWALT Trust. (Hr'g Tr. 51:20–54:13, Apr. 27, 2012.) Mr. Patak testified that BONY had requested that BofA and BAC service the Note on behalf of the CWALT Trust. (*Id.* at 52:1–4.) As part of the relationship, BofA and BAC collect funds paid on account of the Note and then are responsible to pay and transmit the funds received as required by the terms of the respective agency relationships; presumably, BofA paid BONY an amount equal to what it collected on the Note (less any fees, of course), and BONY then paid those proceeds to the certificateholders or other trust investors (less any fees, of course).

There is no doubt that BofA does not have any direct economic interest in the Note (other than its interest in any servicing income), and that all of its interactions with respect to the Note were on BONY's behalf. That is to say, BofA's and BAC's possession of the Note was not for their own account, but for BONY's. In short, BofA and BAC are BONY's agents.[11]

### B. Standing

■■■■ Against this background, BAC filed the Proof of Claim, and BONY sought relief from the automatic stay. Given the different players, Stanley contends that neither BAC nor BONY has standing to request the relief they seek. This is an important challenge: standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To establish its standing, a party must make the requisite showing under both constitutional standing requirements and prudential standing principles. *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004).

#### 1. Constitutional Standing

■■ To satisfy constitutional standing requirements, a party must establish (i) an injury-in-fact; (ii) caused by, or fairly traceable to, the defendant's allegedly unlawful conduct; and (iii) which will likely be redressed by requested relief. *Ariz. Christian Sch. Tuition Org. v. Winn,* —— U.S. ——, 131 S.Ct. 1436, 1442, 179 L.Ed.2d 523 (2011); *Sprint Commc'ns Co. v. APCC Servs., Inc.,* 554 U.S. 269, 273–74, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008).

---

**11.** There is also the fact that lawyers for BONY called Mr. Patak and ratified his authority throughout the proceedings. The Nevada Supreme Court has recently found that such actions can confer authority on an agent absent a written authorization. *See Edelstein v. Bank of New York Mellon,* 128 Nev. Adv. Opn. 48 at 21 n.11 (Sept. 27, 2012) (No. 57430); *see also* RESTATEMENT (THIRD) OF AGENCY § 4.01 (2006).

■ With respect to constitutional standing requirements, BONY and BAC have made the requisite showing. BONY and BAC have shown injury-in-fact by correctly contending that Stanley's bankruptcy limits their ability to collect the Note and enforce the Deed of Trust; if they are precluded from participating in Stanley's bankruptcy, the effect of this court's rulings and the discharge will preclude them from exercising their remedies postbankruptcy. Causation is provided by the simple fact that the automatic stay prohibits both BONY and BAC from presently exercising their nonbankruptcy remedies. Lastly, redressability for BONY exists because lifting the stay would permit BONY to pursue its nonbankruptcy remedies, such as foreclosure, and for BAC because resolution of the claims allowance process would determine if it is able to receive a distribution from Stanley's estate.

### 2. Prudential Standing

■■ Constitutional standing is a minimum requirement; there are several additional judicially-created restrictions on federal court access generally referred to as prudential limitations on standing. *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1108 (9th Cir.2003). Relevant here is the prudential standing requirement that a party may seek redress only for those rights it is given under law. *Newdow*, 542 U.S. at 11–12, 124 S.Ct. 2301. A party satisfies this prudential standing requirement when it asserts its own legal rights and interests, and not the legal rights of others. *Sprint*, 554 U.S. at 290, 128 S.Ct.

2531; *Warth*, 422 U.S. at 499, 95 S.Ct. 2197.

### 3. Standing Tests in the Mortgage Note Context

■ The Bankruptcy Appellate Panel for the Ninth Circuit recently clarified how these prudential limitations on standing apply to mortgage notes. As stated by the Panel, a party seeking relief from stay with respect to a mortgage note has standing if it has "a colorable claim to receive payment pursuant to the Note, which it [can] accomplish either by showing it [is] a 'person entitled to enforce' the Note under Article 3, or by showing that it [has] some ownership or other property interest in the Note." *Veal v. Am. Home Mortg. Servicing (In re Veal)*, 450 B.R. 897, 913 (9th Cir. BAP 2011). With respect to standing to prosecute a proof of claim, an entity must "show that it [is] a 'person entitled to enforce' the Note, or [is] the agent of such a person." *Id.*

■ Common to both inquiries is the issue of whether the party is a "person entitled to enforce" the Note, a concept found in Article 3 of the UCC. Accordingly, Article 3 of the UCC as enacted in Nevada provides the law regarding BONY's and BAC's standing as to the Note,[12] and whether BONY can seek relief from the automatic stay.

### C. The Substantive Law—Article 3 of the UCC[13]

■ Under Nevada law, Article 3 provides the rules governing payment obligations arising under a negotiable instrument[14] such as the mortgage note at issue

---

**12.** If BAC has standing as to enforcing the Note, it perforce has standing as to whether the Note is secured, and secured by the Property, as deeds of trust and other security devices exist only to secure the payment obligations under the related debt instrument.

**13.** Article 3 of the UCC is codified in Nᴇᴠ.Rᴇᴠ. Sᴛᴀᴛ. §§ 104.3101–104.3605.

**14.** A "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or

here. NEV.REV.STAT. § 104.3102. *See Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275, 1279–80 (Nev.2011) ("A mortgage note is a negotiable instrument, and any negotiation of a mortgage note must be done in accordance with Article 3."). It also supplies the rules for identifying the proper party to whom a note's maker [15] must make payment in order to satisfy and discharge the obligations under the note.

### 1. BAC as a "Person Entitled to Enforce" the Note

■■■■ Under Article 3, unless the instrument indicates to the contrary, there is one, and only one, person that a note's maker need pay. *See* UCC § 3–602(a) ("an instrument is paid to the extent payment is made ... to a person entitled to enforce the instrument."). Nevada law follows this requirement; a maker is discharged of his or her obligations under an instrument *only* to the extent that payment is made to a "person entitled to enforce" that instrument. NEV.REV.STAT. § 104.3602(1).[16] In this way, Nevada law and Article 3 relieve a maker of an instrument from the need *to know who owns the* economic or beneficial interest in his or her obligation to pay.

■■■ Article 3 as adopted in Nevada defines a "person entitled to enforce" an instrument as: "(a) The holder of the instrument; [or] (b) A nonholder in possession of the instrument who has the rights of a holder...." [17] NEV.REV.STAT. § 104.3301(1). BAC thus must show that it is a holder of the Note, or a nonholder in possession of the Note who has the rights of a holder. *See Leyva*, 255 P.3d at 1280–81.

■■■ The "holder" of a note is "[t]he person in possession of a negotiable instrument that is payable either to *bearer* or to an *identified person* that is the person in possession [*of the note*]." [18] NEV.REV.STAT. § 104.1201(2)(u)(1) (emphasis supplied). The reference in Section 104.1201(2)(u)(1) to "bearer or ... an identified person" means to build on the fact that a note can be payable to bearer or payable to order. NEV. REV. STAT. § 104.3109. *See Leyva*, 255 P.3d at 1280. A note is payable to bearer if it "[s]tates that it is payable to bearer or to the order of bearer or otherwise indi-

other charges described in the promise or order, if it:
> (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (b) Is payable on demand or at a definite time; and
> (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money...."

NEV.REV.STAT. § 104.3104(1). *See Leyva*, 255 P.3d at 1280.

Under the UCC, sometimes the qualifier "negotiable" is dropped. UCC § 3–104(b) (" 'Instrument' means a negotiable instrument."). *See* NEV.REV.STAT. § 104.3104(2).

**15.** The maker of a note is "a person who signs or is identified in a note as a person undertaking to pay." NEV.REV.STAT. § 104.3103(1)(d).

**16.** There are exceptions not relevant here, as when a thief steals a bearer instrument, and the maker knows that the person requesting payment is the thief. NEV.REV.STAT. § 104.3602(2).

**17.** It also includes "(c) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to NRS 104.3309 or subsection 4 of NRS 104.3418." NEV.REV.STAT. § 104.3301(1)(c). The cross references refer to lost or destroyed instruments. As the Note is in BONY's possession, this third category of "person entitled to enforce" status is not relevant here.

**18.** To determine whether a person is a "holder" then, the court must examine the actual note and any endorsements. *In re Veal*, 450 B.R. at 911.

cates that the person in possession of the [note] ... is entitled to payment." Nev. Rev.Stat. § 104.3109(1)(a).

A note "that is not payable to bearer is payable to order if it is payable to the order of an identified person or to an identified person or order." *Id.* § 104.3109(2). Article 3 defines this "identified person" by reference to the order or direction of the maker of the instrument, or to orders or directions made by the persons to whom the instrument was negotiated. *See id.* These orders or directions will appear from the chain of endorsements contained on the instrument; an "order" under Nevada's version of Article 3 is: "a written instruction to pay money signed by the person giving the instruction." *Id.* § 104.3102(1)(e).[19] These written instructions normally take the form of the words "pay to" followed by an endorsement. An endorsement, in turn, is simply "a signature ... that alone or accompanied by other words is made on an instrument for the purpose of ... negotiating the

instrument...." *Id.* § 104.3204(1). As stated in the comments to Section 3–109 of the UCC:

> An instrument payable to order is payable to an identifiable person.... Thus, an instrument payable to order requires the indorsement of the person to whose order the instrument is payable.

UCC § 3–109 cmt. 1.[20]

In many cases, then, the issue is whether the signatures on an instrument were made for the purpose of negotiating the instrument.[21] A negotiation is the "transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Nev.Rev. Stat. § 104.3201(1). If a note is payable to "an identified person, negotiation requires transfer of possession of the instrument *and* its endorsement by the holder." *Id.* § 104.3201(2) (emphasis added). *See also id.* § 104.3109; UCC § 3–109 cmt. 1 ("An instrument that is payable to an identified

---

**19.** The use of "order" language is one of the primary distinctions between negotiable instruments and ordinary contracts. The words "or order" appearing after the name of the initial payee are often referred to as the "words of negotiability." UCC § 3–104, cmt. 2 ("Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as 'words of negotiability.' ") These simple words empower the payee to order the maker to pay another person so named. By such an "order," usually in the form of an endorsement, the payee thus transfers the instrument to another, who takes the instrument with the identical power to transfer to another by a similar "order."

**20.** For reasons unknown, the Nevada version of Article 3 spells the term "endorsement," with the Official Version of Article 3 uses "indorsement." *Compare* UCC § 3–204(a) (defining "indorsement") *with* Nev.Rev.Stat. § 104.3204(1) (defining "endorsement"). As noted by Professor John Krahmer,

Either spelling can be considered correct. Despite the statutory usage, banks continue to stamp checks as "P.E.G.," standing for "Prior endorsements guaranteed." As explained in *Perini Corp. v. First Nat'l Bank of Habersham,* 553 F.2d 398 at n. 1 (5th Cir. 1977). "[t]his practice could be attributed to the bankers' understandable reluctance to stamp 'Pay any Bank PIG' on the backs of the checks they handle."

John Krahmer, *Uniform Commercial Code Issues and Developments: 2010–2011 UCC Update,* 65 Consumer Fin. L.Q. Rep. 64, 64 n.2 (2011).

**21.** The presumption that a signature was made for the purpose of endorsement is strong; "regardless of the intent of the signer, a signature and its accompanying words are an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement." Nev. Rev.Stat. § 104.3204(1).

person cannot be negotiated without the indorsement of the identified person."). As a consequence, when a party can show it is an "identified person" by the "negotiation" of a note to it, and to each of its successors, it may enforce the note as a "holder." *Leyva*, 255 P.3d at 1280.

There is an alternate way in which an entity or person can become a holder. If an instrument is endorsed "in blank," it becomes a bearer instrument, meaning that anyone who possesses or "bears" it is its holder. *Id.* § 104.3205(2). And if a bearer instrument, it can be "negotiated by transfer of possession alone...." *Id.*

■ Whether Countrywide endorsed the Note in blank thus becomes a critical issue. This is easily shown, however, as endorsement in blank simply requires the unadorned signature of the holder of the instrument. *Id.* This is, for example, the way most people cash checks paid to them—they write just their name on the reverse of the check—thereby endorsing it in blank. This allows their bank to take the check as a holder (after giving the depositor due credit) and process it for collection.[22]

As previously indicated, at the evidentiary hearing the court was able to examine the Note. On the back of the last page of the Note as *originally* executed was the following:

PAY TO THE ORDER OF
_____
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY: [*Handwritten Signature of Michele Sjolander*]
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

(Ex. J; Hr'g Tr. 70:25–71:3, Apr. 27, 2012.) It is hand-signed (not stamped)[23] by Michele Sjolander, identified as an executive vice president, on behalf of Countrywide. (*Id.* at 73:13–14.)

This is a blank endorsement. NEV.REV. STAT. § 104.3205(2). This endorsement converted the Note from an order instrument—one payable to the order of Countrywide—to a bearer instrument, one which could legitimately be collected by whoever is in possession of it. The possessor "bears" such an instrument in the same way that a Greek bears a gift—regardless of whether they came into possession by proper means or by theft or accident. *See, e.g.,* NEV.REV.STAT. § 104.3301(2) ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.").

Here, there is no dispute that BAC has possession of the Note. It is therefore the Note's holder, and a person entitled to enforce the Note. It not only has standing

---

**22.** Even if the bank only takes the check for collection purposes, and with a right to charge back in case of dishonor, the bank becomes a holder when it takes possession of such a check. FRED H. MILLER & ALVIN C. HARRELL, THE LAW OF MODERN PAYMENT SYSTEMS AND NOTES ¶ 3.01[4][a] (2008).

It is obviously safer and better practice for consumers to write "For Deposit Only" or something similar above their signatures, as this turns an otherwise blank endorsement into a restrictive endorsement that limits a

bank's ability to give value for the instrument. *See* NEV.REV.STAT. § 104.3206(3).

**23.** Although, it could have been stamped, as that manner of signature is explicitly recognized by the UCC. UCC § 3–401(b); NEV.REV. STAT. § 104.3401(2) ("A signature may be made manually or by means of a device or machine, and by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing.").

to file and prosecute the Proof of Claim, it has established its entitlement to collect the amounts owing under the Note under nonbankruptcy law. The claim is thus allowed in the amount filed.

### 2. The Validity of Countrywide's Endorsement

■■■ Stanley argues, however, that BAC did not properly establish the authenticity of the blank endorsement. He contends, correctly, that BAC: cannot establish when the endorsement was made; cannot authenticate the signature that made it; and cannot prove the authority of the person who purportedly signed it. As a result, Stanley argues that BAC has failed to meet its burden of showing that the Note was negotiated in a way that establishes that BAC, as BONY's agent, is a person entitled to enforce the Note.

Stanley misapprehends the law governing negotiable instruments. The relevant statutory language is instructive:

In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is *presumed* to be authentic....

UCC § 3–308(a); Nev.Rev.Stat. § 104.3308(1) (emphasis supplied). Under the UCC, the term "presumed" has a special and set meaning. Section 1–206 of the UCC states:

Whenever the Uniform Commercial Code creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

UCC § 1–206; Nev.Rev.Stat. § 104.1206.

The interaction between § 3–308 and the definition of "presumed" in § 1–206 is explained by the official comment to § 3–308. That comment states:

"Presumed" is defined in Section 1–201 and means that *until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid.* The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. *The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence.* The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. *Until introduction of such evidence the presumption requires a finding for the plaintiff.*

UCC § 3–308 cmt. 1 (emphasis supplied). *See also B & C Enters. v. Utter,* 88 Nev. 433, 435, 498 P.2d 1327 (1972).

As stated in White and Summers, "merely by producing a properly indorsed or issued instrument the plaintiff proves that he is entitled to enforce it as a holder." 2 James J. White & Robert S. Summers, Uniform Commercial Code § 16.4.b (5th ed. 2008). Believing that BAC had to establish the validity of the blank endorsement, Stanley introduced no evidence, let alone "some evidence ... which would support a finding that [Sjolander's] signature [was] forged or unauthorized." In short, under UCC § 3–308, he has failed to carry *his* burden.

Stanley seems to argue that showing that the copy of the Note filed with the Proof of Claim lacked a copy of the en-

dorsement satisfies his burden of showing fraud or forgery. (*See* Hr'g Tr. 70:25–71:3, Apr. 27, 2012 ("Our evidence is that the timing. I can show the timing. Their Proof of Claim has no copy of an endorsement on June 8, 2011.").) The argument appears to be since it was not produced at filing, and since the Proof of Claim was never amended formally,[24] the subsequent appearance of the endorsement in BONY's relief from stay action means that it was forged at some point in between.

This sequence of events, however, does not constitute a threshold showing of fraud or forgery. BAC's Proof of Claim on BONY's behalf was filed on June 8, 2011, and admittedly does not have a page showing Sjolander's endorsement. (P.O.C. No. 7.) But BONY's motion to lift stay *does* have a copy of the endorsement, and it was filed on October 24, 2011, long before Stanley objected to the Proof of Claim. (Dkt. No. 24.) Indeed, without ever inspecting the Note, Stanley objected to the endorsement as a rogue or fugitive allonge, so it is undisputed that Stanley knew about the endorsement long before he sought to challenge it.

The evidence established that BAC, at worst, neglected to copy the back side of the Note when filing its Proof of Claim. Although alerted to the omitted endorsement, Stanley failed to produce any evidence that would tend to show that it was forged or fraudulent.[25] Under UCC § 3–308, the endorsement is presumed valid, and BAC's claim is deemed allowed as filed.

### D. BONY's Relief from Stay Motion

■ In addition, as BAC is BONY's agent—a fact not in dispute as set forth above—BONY has established the requisite colorable claim as to ownership of the Note through its agent BAC, and thus has made a sufficient showing to sustain its standing for relief from stay. And as Stanley has not introduced any evidence on his ability to reorganize if BONY's claim were allowed in its full amount—an issue upon which he bears the burden of proof under Section 362(g)(2)—his lack of equity in the Property, see note 5, means that BONY should prevail on its motion for relief from stay.

### E. Whether BAC's Claim is Secured

Even though BAC's claim under the Note is an allowed claim, that does not necessarily mean that it is allowed as a *secured* claim. Finding that BAC is a person entitled to enforce establishes only that BAC's principal, BONY, is entitled to the amount stated in the Proof of Claim (and that Stanley gets credit against the Note for all amounts paid to BONY or BAC); it does *not* establish that the Note is secured by the Property. That can only be determined by reviewing Nevada law on real property security. Accordingly, Stanley challenges BONY's status as a

---

24. Given that Stanley had a copy of the endorsement long before he filed his objection to the Proof of Claim, the court does not have a problem with incorporating Rule 7015 to this contested matter. Given Stanley's advanced knowledge, there was no prejudice in considering the Proof of Claim to be amended to conform to the proof.

25. Stanley tried to show a late placement of the endorsement though cross-examination of BAC's representative, and through three screen shots of BofA's computer indexing and tracking system (which is a relatively ancient DOS-based system). This evidence was inconclusive at best. Against this background, the court is prepared to believe that it is more likely that BAC negligently failed to copy the reverse side of the Note's last page when it filed its Proof of Claim rather than that it forged an endorsement later on. In short, when both are equally likely, the court picks sloth over venality.

secured creditor with respect to the Note, relying on alleged deficiencies in the Assignment to support his contention.

In particular, Stanley argues that "without a proper Assignment of the Deed of Trust, the Bank of New York has no standing to proceed with any Proof of Claim against the property." (Dkt. No. 29 at 5.) Stanley leaps from the premise that the purportedly defective Assignment defeats the bank's standing to prosecute its Proof of Claim to the conclusion that the Note is "unenforceable against the Debtor and the Debtor's property." (*Id.*) Essentially, Stanley conflates the claim at issue here with the security for that claim. This is error.

With respect to the status of the claim as secured, Section 502 provides that when a party in interest has objected to a proof of claim, "the court . . . shall allow [a claim for which a proof of claim is filed] except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . . ." 11 U.S.C. § 502(b)(1). The court thus turns to state law to decide whether, as Stanley contends, BAC has lost the security for its claim against him.

■■■ Before examining Nevada law in detail, a brief review of the facts is in order. BAC has possession of the Note. The Note is endorsed in blank, and thus BAC is the holder. BAC is BONY's agent. BONY is the assignee of the Deed of Trust under the Assignment. The result is that BONY or its agent holds both the Note and all beneficial interests under the Deed of Trust.

■■■ Is this combination of facts sufficient to confer secured status on BONY? A recent Nevada Supreme Court decision, *Edelstein v. Bank of New York Mellon,* 128 Nev. Adv. Opn. 48 at 10 (Sept. 27, 2012) (No. 57430), indicates that it is. In *Edelstein,* the Nevada Supreme Court held that "to have standing to foreclose, the current beneficiary of the deed of trust and the current holder of the promissory note must be the same." *Id.* Here, BONY is the current beneficiary of the Deed of Trust, satisfying the first element of *Edelstein.* Although the current holder of the Note is BAC, BAC is BONY's agent. An agent's possession of an object, however, is the same as if the object were possessed by the principal. RESTATEMENT (THIRD) OF AGENCY § 8.12 cmt. b (2006) ("An agent's possession or control of property on behalf of a principal is tantamount for many purposes to possession or control by the principal. For instances, see UCC § § 1–201(b)(21) (definition of "holder" of instrument and document of title), 3–203 (transfer of instrument), 3–301 (definition of "person entitled to enforce" an instrument) . . . ."). Thus, the second element of *Edelstein* has been met, and BONY has established that it has standing under Nevada law as a secured creditor with the Property as collateral.

Stanley counters with the theory that the timing of the MERS assignment, having occurred after the Note and Deed of Trust were transmitted to BAC, effected a separation of those instruments, leaving BONY with a claim against the Note, but no claims as against the Property.[26] *Edelstein,* however, rejects Stanley's theory.

In *Edelstein,* the Nevada Supreme Court had to decide whether a loan struc-

---

**26.** To the extent Stanley's arguments concern compliance with the terms and conditions of the CWALT Trust, this court remains unconvinced that he has standing to raise such issues. *See Livonia Prop. Holdings, L.L. C. v. 12840–12976 Farmington Rd. Holdings, L.L. C.,* 717 F.Supp.2d 724, 748 (E.D.Mich.2010), *aff'd,* 399 Fed.Appx. 97 (6th Cir.2010).

42

ture identical to the one at issue here irrevocably split the note and deed of trust so that the note became unsecured. In *Edelstein*, a lender had made a loan secured by a Nevada residence. It named MERS as the beneficiary under the deed of trust. The note was later negotiated through various entities, and eventually was endorsed in blank on an allonge affixed to the note. At the relevant times, it was held by ReCon Trust Company, N.A. (a subsidiary of Bank of America), as agent for Bank of New York Mellon. The deed of trust was transferred as well, ultimately being assigned to Bank of New York Mellon.

Against this background, the Nevada Supreme Court summarized its holding:

> In determining whether the party seeking to foreclose in this case met those requirements, we also address whether, as is argued here, the designation of Mortgage Electronic Registration System, Inc. (MERS), as the initial beneficiary of the deed of trust irreparably splits the promissory note and the deed of trust so as to preclude foreclosure. We conclude that when MERS is the named beneficiary and a different entity holds the promissory note, the note and the deed of trust are split, making nonjudicial foreclosure by either improper. However, any split is cured when the promissory note and deed of trust are reunified. Because the foreclosing bank in this case became both the holder of the promissory note and the beneficiary of the deed of trust, we conclude that it had standing to proceed through the FMP.

*Edelstein*, 128 Nev. Adv. Opn. 48 at 2.

Given the isomorphism between the facts in *Edelstein* and the facts here, there can be no doubt that Stanley's claim is not well taken under Nevada law. As Stanley has not raised any additional issues of possible invalidity with respect to the Deed of Trust or the Assignment, they will be taken as valid. The result is that BONY's claim is secured by the Property.

## III. CONCLUSION

For the reasons set forth above, the court hereby overrules Stanley's objection to BAC's Proof of Claim. BAC has an allowed secured claim in the amount set forth therein.

In addition, BONY has established that it is entitled to relief from stay as to the Property, and the court hereby grants that relief.

This order constitutes the court's findings of fact and conclusions of law under Rule 7052, made applicable here by Rule 9014(c). The court will enter separate orders disposing of each motion.