NOT DESIGNATED FOR PUBLICATION

No. 116,354

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Indenture Trustee, on Behalf of the Owners of the
Accredited Mortgage Loan Trust 2004-4 Asset Backed Notes,
*Appellee*,

v.

VEWISER DIXON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed September 29, 2017. Affirmed.

*Michael D. Reed*, of Olathe, for appellant.

*Aaron M. Schuckman*, of Millsap & Singer, LLC, of St. Louis, Missouri, for appellee.

Before BRUNS, P.J., MCANANY, J., and STEVEN R. EBBERTS, District Judge, assigned.

PER CURIAM: Vewiser Dixon appeals the district court's decision granting summary judgment in favor of Deutsche Bank National Trust Company (Bank). Dixon claims the Bank lacked standing to foreclose on the mortgage because it was not a valid holder of the note. He also claims the Bank's claim is barred under the equitable unclean hands doctrine. Dixon's standing argument is based on his assertion that the allonge to the note was not attached to the note when the endorsement was executed, rendering the endorsement ineffective in creating a bearer instrument in the hands of the Bank. Dixon also argues the district court erred when it dismissed his counterclaims while discovery was pending.

1

Our focus with regard to the standing and the unclean hands issues is on the claimed uncontroverted facts set forth in the written submissions by the parties and their legal arguments in connection with the Bank's summary judgment motion. The events preceding the court's entry of summary judgment are well known to the parties. But for other readers, a thumbnail sketch of the rather tortured procedural history surrounding this loan and the legal proceedings that followed will provide some context.

FACTS

On August 26, 2004, Vewiser Dixon executed the promissory note at issue here to the order of the lender, Accredited Home Lenders, Inc. (Accredited). He also executed a mortgage on property he owned in Kansas City in favor of the Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Accredited and its successors and assigns.

On November 1, 2004, the note and mortgage were sold to Accredited Mortgage Loan Trust 2004-4 (Trust), with the Bank as indenture trustee. Under the sales agreement, Accredited continued to service the Dixon loan.

On July 1, 2007, Dixon defaulted on the note. On November 6, 2007, MERS assigned back to Accredited Dixon's mortgage which had been held by the Trust.

*First Foreclosure Action*

Accredited then filed a foreclosure action on December 6, 2007, as the lender on Dixon's mortgage loan, the owner and holder of the note, and as the servicer of the Dixon loan. The case was originally assigned to District Judge George Groneman. The copy of the note attached to Accredited's petition did not have an allonge affixed to it. An allonge is a paper affixed to a negotiable instrument containing endorsements of the instrument.

2

In his answer, Dixon admitted that Accredited was the lender in the transaction but denied that Accredited was a holder in due course. Dixon also asserted various counterclaims.

At some point, the record contains conflicting documents as to exactly when Accredited filed a voluntary petition in bankruptcy in Delaware. It appears that this fact was not immediately brought to the district court's attention.

Accredited sold its servicing rights on the Dixon loan to Select Portfolio Servicing, Inc. (Select). Accredited advised Dixon that Select would be taking over servicing his loan and any future loan payments should be sent to Select.

On April 15, 2009, Select, Accredited's attorney-in-fact, assigned Dixon's mortgage to the Bank. Two days later, without having first sought to intervene in the action or to be substituted as the party plaintiff, the Bank moved for summary judgment against Dixon. Less than a week later, the Bank got around to moving to be substituted as the party plaintiff in Accredited's stead. Accredited did not join in this motion. Dixon objected, claiming that Accredited remained the owner of the note and mortgage. The Bank's motion was denied when its counsel failed to appear for the scheduled hearing on the motion.

On May 11, 2009, Select, the loan servicer, transmitted Dixon's original note and the recorded mortgage to the Bank's counsel, who retained the note thereafter throughout all these proceedings.

On February 22, 2010, Judge Groneman wrote to counsel, expressing concerns about Accredited's inconsistent pleadings and affidavits regarding who owned the note and mortgage.

3

On March 19, 2010, the Bank filed its second motion to intervene and to be substituted as the party plaintiff.

On June 16, 2010, Judge Groneman again wrote to counsel about the inconsistencies in Accredited's various filings and affidavits. He overruled the Bank's second motion to intervene and to be substituted as the party plaintiff, noting that Accredited had not agreed to the substitution and had not withdrawn its claim of ownership of Dixon's note and mortgage. Thus, Accredited remained the party plaintiff.

On June 29, 2010, apparently in response to Judge Groneman's June 16, 2010, letter, Accredited filed its own motion for substitution of parties. There was no disclosure to the court that Accredited was now in bankruptcy. In any event, Accredited referenced the November 1, 2004, sale of the loan to the Trust and attached to its motion a copy of the note with an allonge containing an undated endorsement in blank. Accredited asserted that it had continued to hold the note and held it at the time it filed suit, but its right to prosecute the foreclosure ceased when the servicing of Dixon's loan was assigned to Select; thus, Accredited delivered the note endorsed in blank to the Bank and assigned the mortgage to the Bank on April 15, 2009.

That same day, the Bank filed its third amended motion to intervene and for substitution of parties which mirrors Accredited's motion.

Thereafter, when the court was informed that Accredited had filed bankruptcy and was no longer in business, the court denied the Bank's third motion to intervene and dismissed Accredited's foreclosure action.

4

*Second Foreclosure Action*

One year later, in October 2012, the Bank commenced this present foreclosure action. Judge Groneman having retired, this new case was assigned to District Judge William Mahoney. Attached to the Bank's petition was a copy of Dixon's promissory note with an allonge endorsed in blank by Accredited and which referenced Dixon's loan. Dixon answered and counterclaimed, making the same claims he made in the 2007 foreclosure action. At a hearing on the Bank's motion to dismiss Dixon's counterclaims, the court ultimately dismissed each of them.

On February 26, 2016, the Bank moved for summary judgment on its foreclosure claim. It attached a copy of the note and mortgage, including the allonge, to the memorandum supporting its motion. By this time the district court had implemented electronic filing, so the motion, memorandum, and exhibits were electronically transmitted to the court for filing.

At the hearing that followed on the Bank's motion, the Bank presented the note and mortgage to the court for examination. Dixon argued that there remained genuine issues of material fact regarding discrepancies between the various versions of the note and whether the allonge was affixed to the note at the time the endorsement was executed. He argued that these issues precluded summary judgment. The district court found there was no dispute that Dixon signed the note and was in default. Further, the Bank possessed the note and the mortgage at the time it filed the case, and Dixon's contentions about the timing of the execution of the endorsement on the allonge were speculation. Accordingly, the court granted the Bank's summary judgment motion, and this appeal followed.

DISCUSSION

*Summary Judgment on the Bank's Foreclosure Claim*

First, we address the principal issue in this appeal: whether the district court erred in granting summary judgment to the Bank on its foreclosure claim. The rules controlling summary judgment motions are well known to the parties and can be found in *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016). We apply those same rules in our de novo review of the Bank's summary judgment motion. We need not repeat all of them here, but we do note the requirement that Dixon must come forward with evidence to establish a dispute as to a material fact. "A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial." *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013).

Supreme Court Rule 141 (2017 Kan. S. Ct. R. 204) provides the protocol for asserting and challenging a summary judgment motion. The Rule requires the movant to set forth in separately numbered paragraphs the uncontroverted facts upon which the movant relies, supporting each fact with a precise reference to the record. The adverse party must characterize each of the movant's claimed facts as either controverted or uncontroverted. If controverting a claimed fact, the adverse party must concisely summarize the conflicting testimony or evidence and provide a precise reference to the record where such contrary testimony or evidence can be found.

In *Lovitt v. Board of Shawnee County Comm'rs*, 43 Kan. App. 2d 4, 12, 221 P.3d 107 (2009), our court explained this procedure:

> "K.S.A. 60-256 and Supreme Court Rule 141 (2009 Kan. Ct. R. Annot. 225) set forth a detailed protocol for proceedings on motions for summary judgment. If [there is a fact that a party] wishes to rely upon in support of its motion, that fact must be addressed

in the manner described in Rule 141(a). It must be set forth in a separately numbered paragraph as an uncontroverted contention of fact with a precise reference to where in the record it can be found. This rule is not mere 'fluff'; it serves a necessary purpose, and it means what it says. See *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984)."

So if Dixon sought to controvert a fact asserted by the Bank in its motion, he was required to summarize the conflicting testimony, identify any other genuine issues of material fact which preclude summary judgment, and provide precise reference to the record where these matters could be found. See Rule 141(b).

We also note that a disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014).

To provide context to Dixon's arguments that the Bank lacked standing, we first look to the Bank's motion for summary judgment and Dixon's response to that motion. We will address in order the points raised by Dixon in his written response to the Bank's motion.

*Prior Statements by the District Court Judge*

First, Dixon cites statements by the district judge in a prior hearing on the Bank's motion for a protective order, not during the hearing on the Bank's summary judgment motion. The gist of the judge's comments was that there was a genuine issue of material fact on the standing issue that must be resolved at trial. But in our de novo review we are not bound by such prior statements of the district judge. Rather, in our review we

7

consider the Bank's statement of uncontroverted facts, Dixon's written response to the motion, and the arguments of the parties as to whether those claimed uncontroverted facts raise a genuine issue of material fact that must await a trial for resolution.

*The Bank's Statement of Uncontroverted Facts*

With respect to the Bank's statement of uncontroverted facts Nos. 1 through 12, Nos. 14 through 17, and No. 18, the Bank cited the affidavit of Bret Cline for support. These statements of uncontroverted facts relate to the basic facts including that Dixon signed the note, the terms on the face of the note, the Bank has held the note since May 11, 2010 (when the current servicing agent transferred the note to the Bank's counsel), Dixon executed the mortgage, the provisions on the face of the mortgage, the recording of the mortgage, the recorded assignment of the mortgage to the Bank, and Dixon's default which resulted in the Bank giving Dixon notice of the default.

Citing K.S.A. 60-256, Dixon objected that Cline "is not competent to testify on most of the matters stated, as he has no personal knowledge of facts occurring prior to March 2, 2009 when his employer, Select Portfolio, took over the servicing of the loan in question."

K.S.A. 2016 Supp. 60-256(e) requires affidavits supporting a summary judgment motion be made on personal knowledge and set forth facts admissible in evidence. In his affidavit, Cline stated that he is a document control officer for Select Portfolio, the firm servicing Dixon's loan on behalf of the Bank. He stated that he made his affidavit from Select's business records which include records relating to Dixon's loan. It is apparent from the affidavit that those records go back to the origination of Dixon's loan and the execution of the note and mortgage. Cline stated:

8

"[Select] is a business and maintains the loan records in the course of its regularly conducted business activities and the records are made at or near the time of the event by or from information transmitted by a person with personal knowledge of the event. It is [Select's] regular practice to keep such records in the ordinary course of a regularly conducted business activity."

Dixon fails to explain how, in the context of a mortgage loan servicer's business, Cline's testimony regarding the documents Select relies on in conducting its business would not be admissible in evidence. Except for the question of when the Bank came into possession of the note, Dixon has conceded throughout these proceedings that he signed the note which was secured by a mortgage on his property which now is held by the Bank and that he has not made a payment on the note since June 2007 and is now in default.

In response to statement of uncontroverted fact No. 3, Dixon objects that Cline's recitation of the provisions in the note that the lender can transfer the note and the right to receive payments on the note is the expression of a legal conclusion Cline is not qualified to make. We do not find this to be a valid objection. Cline's statement of what the note provides on its face is a statement of fact, not a legal conclusion. Besides, Dixon has never contended that the note he signed was not a negotiable instrument.

In response to statement of uncontroverted fact No. 6, Dixon objects to Cline's legal conclusion that the Bank is the owner of Dixon's note. While this objection is well founded, it disregards the fact that this statement of uncontroverted fact is also supported by the affidavit of Mary Syphus, and Dixon raises no objection to the Syphus affidavit with respect to this statement of uncontroverted fact.

In response to uncontroverted facts Nos. 7, 8, and 9, notwithstanding Dixon's objection to the Cline affidavit, he admits these allegations.

9

In response to uncontroverted fact No. 11, Dixon objects to the "Syphos" affidavit. But the Bank does not cite the Syphus affidavit as support for this assertion.

In response to uncontroverted fact No. 12, Dixon objects to the Cline and Syphus affidavits as expressing legal conclusions that the Bank is the owner and holder of the note and the assignee of record of the mortgage. As noted earlier, this appears to be well founded as to the legal conclusion that the Bank is the owner of the note. It is also a legal conclusion that the Bank qualifies as a holder of the note. But it is a matter of fact that the mortgage was assigned to the Bank.

In response to the Bank's uncontroverted facts Nos. 16, 17, and 18, Dixon disputes the amount due on the loan and the amount of attorney fees and costs due, but he does not cite any contrary evidence.

*The Bank's Standing to Foreclose*

This brings us to the central issues claimed to be in controversy: (1) whether there is a genuine issue of material fact as to whether the allonge was attached to the note when the endorsement was executed, and (2) whether as a matter of law the lack of evidence that the allonge was attached to the note when the endorsement was executed rendered the endorsement ineffective in creating a bearer instrument in the hands of the Bank, so as to deprive the Bank of standing to pursue this foreclosure action.

*(1) Whether There Is a Genuine Issue of Material Fact*

It is important to note that the original of the note, including the original allonge, are not included in the record on appeal. Though the district court had multiple opportunities to examine the originals, we have not. We have only copies.

On appeal, Dixon concedes that he signed the note which was secured by a mortgage and that he has not made a payment on the note since June 2007 and is now in default. He does not contest that the Bank is the valid holder of the mortgage. Rather, his contention is that there is a genuine issue of material fact as to whether the Bank is the valid holder of the note which the mortgage secures. If the Bank is not the valid holder of the note, then ownership of the note apparently remained with Accredited and now rests in the hands of the bankruptcy trustee. Thus, he contends the district court erred in granting summary judgment to the Bank because the Bank lacked standing to bring this foreclosure action.

Standing is a jurisdictional question in which a court determines whether a party has alleged a sufficient stake in the controversy to warrant invoking the court's jurisdiction and to justify the exercise of the court's remedial powers on that party's behalf. *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016). Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). "[T]o establish standing, a plaintiff must show that (1) he or she suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct. [Citations omitted.]" *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015).

"The burden to establish standing rests with the party asserting it." *FV-I, Inc. v. Kallevig*, 306 Kan. 204, Syl. ¶ 2, 392 P.3d 1248 (2017). We held in *MetLife Home Loans v. Hansen*, 48 Kan. App. 2d 213, 218, 286 P.3d 1150 (2012):

> "[I]n order to grant summary judgment in a mortgage foreclosure action, the district court must find undisputed evidence in the record that the defendant signed a promissory note secured by a mortgage, that the plaintiff is the valid holder of the note and the mortgage, and that the defendant has defaulted on the note."

11

See *King v. Bellamy*, 82 Kan. 301, 302, 108 P. 117 (1910) ("It is a well-established general rule that the possession of negotiable paper proves *prima facie* the ownership of the holder. [Citations omitted.]").

To show standing in a mortgage foreclosure case, the party must show that it has been injured by establishing it is entitled to enforce the note. In *FV-I*, the court stated: "Based on . . . the UCC, FV-I was entitled to enforce the note upon a showing (1) that the note was made payable to FV-I or was endorsed in blank and (2) FV-I was in possession of the note." 306 Kan. at 215. In *FV-I*, the issue was whether the plaintiff had demonstrated that these two requirements had been met prior to the filing of the foreclosure action so as to give the plaintiff standing.

Dixon's promissory note is a negotiable instrument governed by Article 3 of the Uniform Commercial Code (UCC), K.S.A. 84-1-101 et seq. This is because it is payable not merely to Accredited as the lender, but "to the order of Lender." See K.S.A. 2016 Supp. 84-3-104(a)(1). The Bank contends it is a holder of the note with the right to enforce it. The UCC defines a holder to include "the person in possession of a negotiable instrument that is payable . . . to bearer." K.S.A. 2016 Supp. 84-1-201(21)(A). When a note is endorsed in blank, that is, without being endorsed to an identified person under K.S.A. 84-3-205(a), the "instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." K.S.A. 84-3-205(b).

K.S.A. 84-3-204(a) defines endorsement, in relevant part, as "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument . . . . For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."

Dixon challenges the validity of Accredited's endorsement which is essential to turn the note made payable to the order of Accredited into a bearer instrument. The

endorsement was made on an allonge, which is a slip of paper affixed to a negotiable instrument containing endorsements of the instrument. See Black's Law Dictionary 92 (10th ed. 2014). Dixon claims there is a genuine issue of material fact as to whether the allonge containing Accredited's endorsement in blank was attached to the note at the time the endorsement was made. He claims that under K.S.A. 84-3-204(a), the allonge must have been affixed to the instrument at the time the endorsement was executed in order to be effective.

Dixon asserts that there was no allonge attached to the copy of the note which was an exhibit in the petition filed by Accredited in the original 2007 foreclosure action. Dixon executed the note in August 2004 with Accredited identified as the lender entitled to payment. Dixon contends that the lack of an allonge attached to the note when Accredited filed suit raises a fact issue as to whether there was an allonge attached to the note when the note was endorsed in blank and delivered to the Bank in the November 2004 sale transaction. Dixon argues that the record shows that the Bank or its "agent" Accredited

> "provided at least three different versions of the Note in the two foreclosure actions, one of which (the Note attached to the 2007 Petition) did not have the allonge included. This discrepancy alone of the missing allonge would make the attachment of the allonge a material question of fact defeating their Motion for Summary Judgment."

To understand this claim, one must refer to the November 1, 2004, Sale and Servicing Agreement cited by Dixon in his response to the Bank's summary judgment motion.

On November 1, 2004, the note and mortgage were sold to the Accredited Mortgage Loan Trust 2004-4 (Trust), with the Bank as indenture trustee. Accredited continued to service the Dixon loan and was empowered to bring a foreclosure action in the event of default, as provided for in Section 5.01 of the Sale and Servicing Agreement.

13

Pursuant to Section 2.04 of the agreement, the Bank as trustee agreed to hold the mortgage files "for the benefit of all present and future Noteholders." Under Section 2.05 of the agreement Accredited was required to deliver to the Bank the original mortgage note in each mortgage file "endorsed without recourse in blank or to '[the Bank], as Indenture Trustee under the Indenture dated as of November 1, 2004, Accredited Mortgage Loan Trust 2004-4' by [Accredited], including all intervening endorsements showing a complete chain of endorsement." Under Section 2.06(b), if the Bank found any document in the mortgage file that had not been executed or did not conform to the requirements of Section 2.05, the Bank was to promptly notify Accredited and Accredited had 60 days to correct the omission.

The fact that Accredited did not attach a copy of the allonge to the copy of the note attached to the 2007 foreclosure petition is not evidence that the allonge was not attached to the original note when it was sold to the Bank in November 2004. Accredited was the lender and payee identified in Dixon's note. Accredited attached a copy of the note to its petition. The reasonable inference from the sale of the note to the Bank is that Accredited complied with the endorsement requirements of the agreement because there is no evidence that the Bank noted the absence of an endorsement and notified Accredited of this omission. Thus, if we infer that Accredited complied with the agreement, then we equally infer that the allonge with the endorsement in blank was attached to the note when it was delivered to the Bank in conformity with Section 2.05 of the agreement.

But the more probable scenario is that Accredited failed to execute an endorsement in November 2004 and the Bank failed to object. Accredited continued to hold the note with the right to enforce it as the original payee and as the loan servicer under the November 2004 agreement. But under either scenario, when Accredited later filed its foreclosure action in 2007 under the authority granted in Section 5.01 of the agreement, there would be no need for Accredited to include a copy of the allonge under the first scenario or to execute an endorsement in blank on an allonge attached to the note

14

under the second scenario because the endorsement in blank on the allonge gave Accredited no different or better rights than the rights it already possessed by being the original payee on the note.

Select, the loan servicer that replaced Accredited, transmitted the note to the Bank on May 11, 2009. That note remained in the file of the Bank's counsel thereafter. A copy of that note with an allonge containing an endorsement in blank was attached to the Bank's foreclosure petition filed in October 2012.

Dixon contends that when the Bank filed this foreclosure action in October 2012, there is no indication that the copy of the allonge containing the endorsement in blank was affixed to the note. According to Dixon, "[t]he allonge itself is a scanned copy that shows no signs of ever being stapled or otherwise affixed to the note." This observation is not based on an examination of the original note but of a photocopy of the Bank's petition with exhibits attached. To the contrary, our visual and tactile examination of the original petition and Exhibit A to the petition, Dixon's note and allonge, discloses that while staple holes on the note and allonge are not easily seen, they are there along with depressions in the upper right-hand corner of the note and allonge from the staples indicating that the allonge was attached to the note when the petition was filed. At the hearing on the Bank's summary judgment motion, the Bank's counsel provided the court with the original note with allonge attached for the court's inspection. It had already been produced for inspection at two earlier hearings. Having examined the original documents, the court ultimately concluded, "I think these questions you've raised about whether the Allonge was attached or not, I think those are speculation at this point."

Dixon also argued at the hearing on the Bank's motion that there was no allonge attached to the note when Select, the servicing agent, transmitted the note to the Bank's counsel on May 11, 2009. He arrives at this conclusion by observing that the transmittal letter refers to the note, but not the note with allonge. We find no support for this

15

conclusion. Under K.S.A. 84-3-204(a), "a paper affixed to the instrument is a part of the instrument." The transmittal letter's reference to the note would encompass any attached allonge. The lack of a separate reference to an allonge does not constitute evidence that the allonge that accompanied Dixon's note when the second foreclosure action commenced was not attached to the note when the endorsement was executed.

Dixon fails to present evidence—as opposed to speculation—in his effort to create a genuine issue of material fact regarding the timing of the execution of the endorsement found on the allonge.

*(2) Whether as a Matter of Law an Allonge Must Be Attached to the Note at the Time the Endorsement Is Executed on the Allonge*

Even if there were evidence to create a genuine issue as to whether the allonge was attached to the note at the time the endorsement in blank was executed, we still must determine whether this raises an issue of *material* fact so as to preclude summary judgment.

We find no Kansas case specifically addressing whether the allonge must be affixed to the note at the time the endorsement is made on the allonge. K.S.A. 84-3-204(a), which defines an endorsement, provides: "For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." The only official UCC comment on this provision states: "The last sentence of subsection (a) is based on subsection (2) of former Section 3-204. An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement." Official UCC comment 3 to K.S.A. 84-3-202 (Ensley 1983) states:

> "Subsection (2) follows decisions holding that a purported endorsement on a
> mortgage or other separate paper pinned or clipped to an instrument is not sufficient for

16

negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper was called an allonge."

This provision was intended to "liberalize the utilization of an allonge by permitting the use of a separate sheet regardless of whether the original document has space remaining for further indorsements." *In re Shapoval*, 441 B.R. 392, 394 (Bankr. D. Mass. 2010). *Shapoval* is one of Dixon's cited cases. There, Wells Fargo made a claim in bankruptcy proceedings and submitted a copy of the note without any endorsement. The debtor objected to the claim, asserting that Wells Fargo did not have standing to assert it. In response, Wells Fargo submitted an unattached allonge that contained an endorsement in blank. Unlike in *Shapoval*, in our case the Bank attached a copy of the note with an attached allonge endorsed in blank at the time it filed this foreclosure action. *Shapoval* is not helpful.

Dixon's other cited cases suffer from the same infirmity. In *Guzman v. Deutsche Bank Nat. Trust Co.*, 179 So.3d 543 (Fla. Dist. App. 2015), the Bank filed a foreclosure action, but the note had not been endorsed and the mortgage had not been assigned to the Bank by the original mortgagee. The trial court granted the Bank leave to file an amended pleading. The Bank filed an amended petition, attaching to it a note with an undated allonge with a special endorsement to IndyMac Bank, F.S.B., which, in turn, endorsed the note in blank. The Florida District Court of Appeals held that the Bank lacked standing because it did not provide any evidence the endorsements predated the filing of the initial petition, and standing could not be established by presenting an undated allonge after the proceeding commenced. 179 So.3d at 546-57.

Our case differs from *Guzman*. After the district court dismissed Accredited's foreclosure action, the Bank filed the current foreclosure action. A copy of the note with an attached allonge containing an endorsement in blank was attached as an exhibit to the

17

Bank's original petition. Besides, the *Guzman* decision turned on the fact that the Bank did not provide any evidence the endorsements predated the filing of the initial petition, not that the allonge had not been attached to the note when the endorsement was executed.

In the final case cited by Dixon, *U.S. Bank Natl. v. George*, 50 N.E.3d 1049 (Ohio App. 2015), U.S. Bank filed a foreclosure petition and attached a copy of the note, mortgage, and assignments of the mortgage. The note contained a series of endorsements. The next to last endorsement was to Wells Fargo Home Mortgage, Inc. The last endorsement was from Wells Fargo Bank to U.S. Bank. The mortgagor contended there was no showing that Wells Fargo Bank had the authority from Wells Fargo Home Mortgage, Inc., to endorse the note to U.S. Bank. Wells Fargo Bank submitted an affidavit to counter this contention, but the affidavit did not explain how the bank had the authority to assign the mortgage on behalf of Wells Fargo Home Mortgage, Inc. With respect to the note, the copy of the note attached to the affidavit did not contain any endorsement to U.S. Bank. Thus, because there was no unbroken chain of endorsements from the original lender to U.S. Bank, U.S. Bank was not entitled to summary judgment of foreclosure. Again, and unlike in *U.S. Bank*, in our case a copy of the note with the allonge containing an endorsement in blank from Accredited, the original lender, was attached to the Bank's foreclosure petition and to its summary judgment motion.

The rationale for having the endorsement on the note itself or on an allonge attached to the note is to avoid fraud (see *Pribus v. Bush*, 118 Cal. App. 3d 1003, 1009 n.7, 173 Cal. Rptr. 747 [1981]) and to further the policy of providing a traceable chain of title, thereby promoting the free and unimpeded negotiability of instruments (see *Haug v. Riley,* 101 Ga. 372, 29 S.E. 44, 46 [1897]). (On the merits, *Pribus* is not helpful because it turned on the old rule that the allonge was not effective because there was sufficient space on the instrument itself to make the endorsement.)

18

Consistent with these policy considerations is the holding in *Purifacato v. Nationstar Mortgage*, 182 So.3d 821 (Fla. Dist. App. 2016), which dealt with a claim that the allonge was not firmly affixed to the note before the foreclosure action commenced. The mortgagors argued that the trial court erred in denying their motion to dismiss because the allonge containing a blank endorsement by the loan originator was not sufficiently affixed to the note to prove that the holder of the note had standing to foreclose on the loan.

Like the Kansas statute, the Florida version of the UCC required that the paper containing the endorsement be affixed to the instrument. See Fla. Stat. § 673.2041(1) (2010). In its de novo review, the Florida court observed that this requirement protected a purchaser of the note from the risk that a previous holder had negotiated the instrument to someone else using a separate document. Thus: "Where an allonge contains evidence of a clear intent that the note and the allonge were to be physically attached to each other, such evidence of intent is sufficient to establish a valid endorsement under the UCC. [Citations omitted.]" 182 So.3d at 823.

In *Purificanto*, the allonge contained the loan number, the date and amount of the loan, and the maker's name and address. The allonge stated that it was "'affixed and [became] a permanent part of said note.'" 182 So.3d at 824. Finally, it was part of the loan file at the time the holder filed suit.

In our present case, the allonge does not contain the exact statement found in the *Purificanto* allonge, but it states in bold print the equivalent that it is an "**ALLONGE TO NOTE**." Moreover, the allonge in our present case identifies the note by loan number, the name of the borrower, the amount of the loan, and the address of the property secured by the loan. In *Purifacato*, the note and allonge were simultaneously imaged as a single document before the filing of the foreclosure action (apparently under an electronic filing protocol). This was sufficient to establish that "the allonge was sufficiently affixed to the

Note so as to become a part thereof and to prove Nationstar's status as the holder of the Note with standing to foreclose." 182 So.3d at 824.

In our case, the Bank's foreclosure petition was not electronically filed. Thus, a copy of the allonge was physically attached to the copy of the note which was an exhibit in the foreclosure petition when filed. In the course of these proceedings, the Bank provided the court with the original note and allonge three or four times for the court's inspection. It had been in the physical possession of the Bank's counsel since May 2009, long before the Bank filed suit in October 2012.

For a similar holding, see *LoanCare v. Negron*, No. F-020767-13, 2016 WL 4547432, at *2 (N.J. Super. 2016) (unpublished opinion), wherein the court stated:

> "Defendants contend LoanCare is not a person entitled to enforce because the allonge was not 'affixed' to the note. *See N.J.S.A.* 12A:3-204(a). We agree with Judge Velazquez, however, that LoanCare had standing to enforce this note. The allonge was indorsed in blank, meaning that it had become bearer paper and its transfer constituted negotiation. The allonge was included with the certified copy of the note. LoanCare certified it was in possession of the note prior to filing the foreclosure complaint. This allonge specified the names of the borrowers, the date the note was executed, the loan number, the address of the property that was the subject of the mortgage, the principle balance of the mortgage and the originating lender. Given this information, the risk of fraud was low. Indeed, defendants did not contend they were pursued by any other lenders."

Under these circumstances, we conclude that the allonge containing the endorsement in blank was suitably affixed to Dixon's note so as to give the Bank standing to pursue this foreclosure action. This is not a case in which the Bank as purchaser of the note was confronted with an entity that claimed to be the rightful holder of the note by reason of an endorsement that predated the Bank's acquisition of the note, all of which

20

could have been avoided if the allonge had been attached to the note all along. Even without the allonge being attached to the note in Accredited's foreclosure petition, Accredited was still entitled to proceed in the initial foreclosure action as the servicer of Dixon's loan.

The Bank incorporated a copy of the note with an allonge affixed in its foreclosure petition. There is no dispute that the Bank is the valid holder of the mortgage. Dixon admits he is in default. Under the circumstances of this case, Dixon has not shown that whether the allonge was attached to the note at the time of the endorsement is material to the issue of whether the Bank had standing to enforce the note. We conclude that the Bank was the holder of the note and had standing to enforce the mortgage that secured it. The district court did not err in granting summary judgment foreclosing the mortgage.

*Equitable Principles:  Unclean Hands*

Next, Dixon argues that the Bank should be barred from pursuing this foreclosure action by application of the "unclean hands" doctrine. He argues that there is a genuine issue of material fact as to whether the claimed inequitable conduct of the Bank or Accredited or both of them renders summary judgment inappropriate.

In his appellate brief, Dixon argues that the Bank and Accredited, which is claimed to be the Bank's agent, engaged in inequitable conduct by misleading their lawyers regarding the ownership of the Dixon note before the 2007 case was filed. This claim suffers from a number of infirmities.

First, Dixon's unclean hands argument relates to the district court granting summary judgment to the Bank. Dixon never asserted in response to the Bank's summary judgment motion that the Bank's claim was barred by its unclean hands. That matter was never asserted in the written submissions to the district court.

Second, Dixon claims in his appellate brief that Accredited was the agent for the Bank, such that its inequitable conduct is attributed to the Bank. Again, Dixon did not assert this claim in his response to the Bank's motion. Moreover, he failed to comply with Supreme Court Rule 141(b)(1)(C) (2017 Kan. S. Ct. R. 204) by identifying facts in his response to the Bank's motion that create a genuine issue of material fact as to whether Accredited was the agent for the Bank and by providing additional supporting facts with specific references to the record. Trial counsel have been repeatedly admonished that Supreme Court Rule 141 is to be followed and that it is not "'just fluff.'" See *Sperry v. McKune*, 305 Kan. 469, 490, 384 P.3d 1003 (2016); *Rhoten v. Dickson*, 290 Kan. 92, 103-04, 223 P.3d 786 (2010); *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984).

Third, Dixon also failed to identify in his response to the Bank's motion any facts with specific references to the record which identify either the Bank's or Accredited's inequitable conduct which bars the Bank's claims, all as required by Supreme Court Rule 141(b)(1)(C).

Fourth, the conduct Dixon refers to in his appellate brief relates to conduct in a different lawsuit, not the one now before us. The different lawsuit was the foreclosure action brought by Accredited several years before this action. Under Dixon's theory, the conduct Dixon complains of would have applied to Accredited in the original suit, but he does not explain how that conduct should serve to bar the Bank in this separate foreclosure action.

Fifth, mortgage foreclosures are equitable in nature. *First Nat'l Bank of Olathe v. Clark*, 226 Kan. 619, 623, 602 P.2d 1299 (1979). Thus, principles of equity apply in mortgage foreclosure proceedings. For example, in *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 722, 303 P.3d 705 (2013), the mortgagor invoked principles of equity in an effort to relieve it from acceleration of the maturity of the

22

underlying debt. But Dixon does not provide us with a case from Kansas or elsewhere in which a mortgage foreclosure was barred for unclean hands under facts similar to those before us today. Applying an equitable principle such as the unclean hands doctrine is a matter of discretion for the district court, not a binding rule. *Green v. Higgins*, 217 Kan. 217, 220, 535 P.2d 446 (1975); *National City Mortgage Co. v. Ross*, 34 Kan. App. 2d 282, 287, 117 P.3d 880 (2005). A judicial action constitutes an abuse of discretion if no reasonable person would take the view adopted by the district court, if the action is based on an error of law, or if it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). Here, Judge Mahoney oversaw the Bank's conduct throughout these current proceedings and found no basis for barring the Bank's actions. Dixon does not explain how Judge Mahoney's decision fell so far of the mark as to beyond what any reasonable judge would have done. Nor does he point to an error of fact or law that motivated the judge's claimed erroneous ruling. Likewise, in our de novo review we cannot identify any conduct that would require us to apply this equitable doctrine to this case. Under these circumstances, we find no grounds for reversing the district court's granting of summary judgment based on a claim of unclean hands.

*The Dismissal of Dixon's Counterclaims*

The final issue we must confront is the court's dismissal of Dixon's counterclaims. We have de novo review of the Bank's motion to dismiss Dixon's counterclaims for failure to state a claim upon which relief may be granted. In our review, just as in the district court, we view the well-pleaded facts in the light favoring Dixon and accept them as true for purposes of the motion, along with all reasonable inferences we can draw from those facts. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. See *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

23

At the initial hearing on the Bank's motion, the district court deferred ruling to the close of discovery. But, of course, in considering a motion to dismiss the court considers only the well-pled facts within the four corners of Dixon's statement of his counterclaims. In any event, before the close of discovery, the court ultimately dismissed Dixon's counterclaims on August 13, 2014, on the following grounds:

- Wrongful foreclosure claim—because the Bank possessed both the note and the mortgage and Dixon did not allege he made payments or that acceleration of the note was not warranted.

- Truth in Lending Act claim—because it was time barred based on the one-year statute of limitations. Pursuant to 15 U.S.C. § 1640(e) (2012), Dixon had one year from the date of the claimed Truth in Lending Act violation—which occurred in 2004—to bring his claim.

- Kansas Consumer Protection claim—because there was no consumer transaction between the Bank and Dixon and any claim was time barred by the three-year statute of limitations. See *Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 1 P.3d 899 (2000).

- Real Estate Settlement Procedure Act—because the Bank was not the lender or originator of the loan, and in any event the claim was time barred under the one-year statute of limitations found in 12 U.S.C. § 2614 (2012).

- Fraud claim—because Dixon did not bring his fraud claim within two years from discovery of the fraud. Even assuming Dixon did not discover the fraud until Accredited filed its foreclosure action, more than two years had passed since then.

- Unjust enrichment claim—because an implied contract violates the statute of frauds and, if the contract had been in writing, it would have been subject to the three-year statute of limitations found in K.S.A. 60-512.

24

Dixon argues the district court's ruling while discovery was ongoing was premature. He relies on *Montoy v. State*, 275 Kan. 145, 149, 62 P.3d 228 (2003), for support. But *Montoy* dealt with a motion for summary judgment, not a motion to dismiss for failure to state an actionable claim. While summary judgment proceedings typically (but not always) await the close of discovery, such is not the case with motions to dismiss. See *ARY Jewelers v. Krigel*, 277 Kan. 27, 38, 82 P.3d 460 (2003).

Here, the Bank's motion did not stray to facts beyond the four corners of the petition, nor did the district court appear to consider any facts outside the pleadings. Consequently, the district court's ruling was not premature, and Dixon does not challenge on appeal the soundness of the substantive bases for the court's rulings on the motion. With respect to the wrongful foreclosure claim, Dixon fails to provide us any statutory or case authority that recognizes this as an actionable claim as opposed to simply a defense to the Bank's foreclosure action. Accordingly, we find no error in dismissing Dixon's counterclaims for failure to state actionable causes of action.

Affirmed.